ORIGINAL

FILED

MAR 29 2018

U.S. COURT OF
FEDERAL CLAIMS



# In the United States Court of Federal Claims

No. 13-307C
Filed: March 29, 2018

| | |
|---|---|
| ************************************* | 45 C.F.R. § 75.435(h) (Uniform Administrative Requirements); |
| | 48 C.F.R. § 2.101(b) (Federal Acquisition Regulations Definitions); |
| | 28 U.S.C. §§ 1491(a) (Tucker Act Jurisdiction), 1498(a) (Patent Infringement Jurisdiction), 1927 (Liability for Excessive Costs); |
| LARRY GOLDEN, | 31 U.S.C. §§ 6303 (Using Procurement Contracts), 6304 (Using Grant Agreements), 6305 (Using Cooperative Agreements); |
| Plaintiff, *pro se*, | 35 U.S.C. §§ 102 (Novelty), 103 (Obviousness), 111(a),(b) (Application for Patent), 120 (Benefit of Earlier Filing Date), 251 (Reissue of Defective Patents), 252 (Effect of Reissue); |
| v. | |
| THE UNITED STATES, | |
| Defendant. | Manual of Patent Examining Procedure (9th ed. 2015); and |
| | Rule of the United States Court of Federal Claims 12(b)(1) (Jurisdiction), 12(b)(6) (Failure to State a Claim), 12(h)(3) (Lack of Subject-Matter Jurisdiction), 15(a) (Amendments Before Trial), 41(b) (Dismissal of Actions), 56(e), (f) (Summary Judgment). |
| ************************************* | |

**Larry Golden**, Greenville, South Carolina, *pro se*.

**Nicholas Jae-Ryoung-Kim**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART THE GOVERNMENT'S MOTION FOR PARTIAL DISMISSAL

**BRADEN**, *Chief Judge*.

To facilitate review of this Memorandum Opinion And Order, the court has provided the following outline.

I.   RELEVANT FACTUAL BACKGROUND.
     A.   The Prosecution History Of The Relevant United States Patent Applications.
     B.   National Science Foundation Grants And Cooperative Agreements.
     C.   National Institutes Of Health Grants.

II.  PROCEDURAL HISTORY.

III. STANDARD OF REVIEW.
     A.   Jurisdiction.
     B.   Standard Of Review For A Motion To Dismiss Under RCFC 12(b)(1).
     C.   Standard Of Review For A Motion To Dismiss Under RCFC 12(b)(6).
     D.   Standard Of Review For *Pro Se* Litigants.

IV.  DISCUSSION.
     A.   Whether Certain Patent Infringement Allegations In The August 10, 2017 Fifth
          Amended Complaint Should Be Dismissed Under RCFC 12(b)(1) And 12(b)(6).
          1.   Patent Infringement Allegations In The August 10, 2017 Fifth Amended
               Complaint.
          2.   The Government's Argument.
          3.   Plaintiff's Response And Motion For Leave To File A Motion For
               Summary Judgment.
          4.   The Government's Reply And Opposition To Plaintiff's Motion For Leave
               To File A Motion For Summary Judgment.
          5.   Plaintiff's Reply.
          6.   The Court's Resolution.
               a.   Governing Precedent.
               b.   Patent Infringement Allegations Concerning National Science
                    Foundation Grants And Cooperative Agreements Must Be
                    Dismissed Under RCFC 12(b)(1).
                    i.    Regarding National Science Foundation Grants.
                    ii.   Regarding National Science Foundation Cooperative
                          Agreements.
               c.   Patent Infringement Allegations Concerning National Institutes Of
                    Health Grants Must Be Dismissed Under RCFC 12(b)(1).
               d.   Patent Infringement Allegations Concerning The Government's
                    Alleged Use Of "Smartphones And Other Consumer Devices"
                    Must Be Dismissed Under RCFC 12(b)(1) And 12(b)(6).

e.      Patent Infringement Allegations Concerning Broad Agency Announcements Must Be Dismissed Under RCFC 12(b)(6).

f.      Patent Infringement Allegations Concerning The '033 Patent Must Be Dismissed Under RCFC 12(b)(1).

g.      Patent Infringement Allegations Concerning Unissued Patent Applications And Pre-Issuance Use Or Manufacture Must Be Dismissed Under RCFC 12(b)(1).

h.      Patent Infringement Allegations Concerning The '761, '280, And '189 Patents Must Be Dismissed Under RCFC 12(b)(6).

V.      CONCLUSION.

# I. RELEVANT FACTUAL BACKGROUND.[1]

## A. The Prosecution History Of The Relevant United States Patent Applications.

On April 5, 2006, Larry Golden filed U.S. Patent Application No. 11/397,118 (the "'118 Application"), entitled "Multi Sensor Detection And Lock Disabling System," with the United States Patent and Trademark Office (the "USPTO").[2] 2/12/16 Am. Compl. Ex. B. The '118 Application "pertain[ed] to anti-terrorist detection and prevention systems, and more particularly pertain[ed] to a disabling lock mechanism combined with a chemical/biological/radiological detection system for use with products grouped together by similar characteristics in order to prevent unauthorized entry, contamination[,] and terrorist activity." 2/12/16 Am. Compl. Ex. B.

On June 6, 2008, Mr. Golden filed a continuation-in-part[3] of the '118 Application, U.S. Patent Application No. 12/155,573 (the "'573 Application"). 2/12/16 Am. Compl. Ex. C.

On June 10, 2008, the USPTO issued the '118 Application, as U.S. Patent No. 7,385,497 (the "'497 Patent"). 2/12/16 Am. Compl. Ex. B.

---

[1] The relevant facts discussed herein were derived from: exhibits attached to the February 12, 2016 Amended Complaint ("2/12/16 Am. Compl. Ex. A–I"); the August 10, 2017 Fifth Amended Complaint ("8/10/17 Am. Compl."); and exhibits attached to the Government's October 20, 2017 Motion For Partial Dismissal ("10/20/17 Gov't Mot. Ex. 1–22"). *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999) ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged."); *see also Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003) (the trial court "may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint").

[2] The examination of a patent application at the USPTO

> begins with the applicant filing the application itself. . . . [T]his application can be one of two basic types. The usual course is to file a regular application[, *i.e.*, a nonprovisional application,] under [35 U.S.C. §] 111(a). The statute has been . . . amended, however, to permit the filing of a provisional application as set out in [35 U.S.C. §] 111(b). This latter form of application is not itself subject to examination, although it can be followed by a regular application within a year. The provisional application is in the nature of a domestic priority document.

R. CARL MOY, MOY'S WALKER ON PATENTS § 3:3 (4th ed. 2003).

[3] "A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application and adding matter not disclosed in the said earlier nonprovisional application." MANUAL OF PATENT EXAMINING PROCEDURE ("MPEP") § 201.08 (9th ed. 2015).

On December 22, 2009, the USPTO issued the '573 Application, as U.S. Patent No. 7,636,033 (the "'033 Patent"). 2/12/16 Am. Compl. Ex. C.

On January 20, 2010, Mr. Golden filed a continuation[4] of the '573 Application, U.S. Patent Application No. 12/657,356 (the "'356 Application"). 2/12/16 Am. Compl. Ex. D.

On May 27, 2010, Mr. Golden filed a continuation of the '356 Application, U.S. Patent Application No. 12/802,001 (the "'001 Application"). 2/12/16 Am. Compl. Ex. E.

On March 31, 2011, Mr. Golden filed a reissue application[5] of the '033 Patent, U.S. Reissue Application No. 13/065,837 (the "'837 Application"). 2/12/16 Am. Compl. Ex. G.

On September 9, 2011, Mr. Golden filed a second reissue application of the '033 Patent, U.S. Reissue Application No. 13/199,853 (the "'853 Application"). 2/12/16 Am. Compl. Ex. H.

On November 3, 2011, Mr. Golden filed a divisional application[6] of the '001 Application, U.S. Patent Application No. 13/288,065 (the "'065 Application"). 2/12/16 Am. Compl. Ex. F.

On January 31, 2012, the USPTO issued the '356 Application, as U.S. Patent No. 8,106,752 (the "'752 Patent"). 2/12/16 Am. Compl. Ex. D.

---

[4] "A continuation application is an application for the invention(s) disclosed in a prior-filed copending nonprovisional application. . . . The disclosure presented in the continuation must not include any subject matter which would constitute new matter if submitted as an amendment to the parent application." MPEP § 201.07.

Although Mr. Golden filed the '356 Application as a "continuation" of the '573 Application, the '356 Application was filed after issuance of the '573 Application, *i.e.*, when the '573 Application was no longer pending. *See* 35 U.S.C. § 120 ("An application for patent for an invention disclosed . . . in an application previously filed in the United States, . . . shall have the same effect, as to such invention, as though filed on the date of the prior application, *if filed before the patenting* or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application[.]" (emphasis added)); *see also* MPEP § 201.07.

[5] Defective patents may be corrected by "reissue." *See* 35 U.S.C. § 251(a) ("Whenever any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent.").

[6] A divisional application is "[a] later application for an independent or distinct invention, carved out of a nonprovisional application . . . disclosing and claiming only subject matter disclosed in the earlier or parent application[.]" MPEP § 201.06.

5

On December 18, 2012, the USPTO issued the '001 Application, as U.S. Patent No. 8,334,761 (the "'761 Patent"). 2/12/16 Am. Compl. Ex. E.

On January 1, 2013, the USPTO issued the '837 Application, as U.S. Reissue Patent No. RE43,891 (the "'891 Patent"). 2/12/16 Am. Compl. Ex. G.

On February 12, 2013, the USPTO issued the '853 Application, as U.S. Reissue Patent No. RE43,990 (the "'990 Patent"). 2/12/16 Am. Compl. Ex. H.

On September 9, 2013, Mr. Golden filed a continuation of the '065 Application, U.S. Patent Application No. 14/021,693 (the "'693 Application"). 2/12/16 Am. Compl. Ex. I.

On September 10, 2013, the USPTO issued the '065 Application, as U.S. Patent No. 8,531,280 (the "'280 Patent"). 2/12/16 Am. Compl. Ex. F.

On July 23, 2015, Mr. Golden filed a continuation of the '693 Application, U.S. Patent Application No. 14/806,988 (the "'988 Application). 8/10/17 Am. Compl. ¶ 36; *see also* U.S. Patent No. 9,589,439.

On August 4, 2015, the USPTO issued the '693 Application, as U.S. Patent No. 9,096,189 (the "'189 Patent"). 2/12/16 Am. Compl. Ex. I.

On March 6, 2017, Mr. Golden filed a continuation of the '988 Application, U.S. Patent Application No. 15/530,839 (the "'839 Application"). 8/10/17 Am. Compl. ¶ 3.

On March 7, 2017, the USPTO issued the '988 Application, as U.S. Patent No. 9,589,439 (the "'439 Patent"). 8/10/17 Am. Compl. ¶ 36; *see also* '439 Patent.

On June 29, 2017, the USPTO published the '839 Application, as U.S. Publication No. 2017/0186259. 8/10/17 Am. Compl. ¶ 3.

As a result of the aforementioned USPTO actions, Mr. Golden became the "sole owner of the entire right, title, and interest in and to" the '497, '033, '752, '761, '891, '990, '280, '189, and '439 Patents, as well as the '839 Application. 8/10/17 Am. Compl. ¶ 38; *see also* 2/12/16 Am. Compl. Ex. B–I.

The following Court Exhibit A shows the order in which each of the aforementioned patent applications was filed by Mr. Golden and issued by the USPTO.



**B.    National Science Foundation Grants And Cooperative Agreements.**

In July 2004, the National Science Foundation (the "NSF")[7] issued "Cooperative Agreement Financial & Administrative Terms and Conditions" (the "2004 CA-FATCs"), to advise recipients that the "NSF cannot assume any liability for accidents, illnesses, injuries, or claims arising out of, or related to, any activities supported by an award or for unauthorized use of patented or copyrighted materials." 10/20/17 Gov't Mot. Ex. 15 (Article 38).

On September 1, 2004, the NSF awarded Cooperative Agreement No. EEC-0425914, "Integrated Nanomechanical Systems (COINS)," to the University of California, Berkeley ("UC Berkeley"), incorporating the 2004 CA-FATCs. 10/20/17 Gov't Mot. Ex. 20.

On July 1, 2007, the NSF issued "Cooperative Agreement Financial & Administrative Terms and Conditions" (the "2007 CA-FATCs"), to advise recipients that the "NSF cannot assume any liability for accidents, illnesses, injuries, or claims arising out of, or related to, any activities supported by an award or for unauthorized use of patented or copyrighted materials." 10/20/17 Gov't Mot. Ex. 15 (Article 39).

On September 1, 2009, the NSF awarded Cooperative Agreement No. EEC-0832819, "The Center of Integrated Nanomechanical Systems (COINS) Renewal Years 6-10," to UC Berkeley, incorporating the 2007 CA-FATCs. 10/20/17 Gov't Mot. Ex. 21.

On January 4, 2010, the NSF issued "Research Terms & Conditions" (the "2010 RT&Cs"), to advise recipients that the "NSF cannot assume any liability for accidents, illnesses or claims arising out of any work supported by an award or for unauthorized use of patented or copyrighted materials." 10/20/17 Gov't Mot. Ex. 15 (Article 25).

On August 19, 2010, the NSF awarded Grant No. CCF-1029585, "Collaborative Research: Computational Behavioral Science: Modeling, Analysis, and Visualization of Social and Communicative Behavior," to the Massachusetts Institute of Technology ("MIT"), incorporating the 2010 RT&Cs. 10/20/17 Gov't Mot. Ex. 6.

On January 14, 2013, the NSF issued "Research Terms & Conditions" (the "2013 RT&Cs"), to advise recipients that the "NSF cannot assume any liability for accidents, illnesses or claims arising out of any work supported by an award or for unauthorized use of patented or copyrighted materials." 10/20/17 Gov't Mot. Ex. 15 (Article 32).

---

[7] The NSF is "an independent federal agency created by Congress in 1950 'to promote the progress of science; to advance the national health, prosperity, and welfare; to secure the national defense[.]' . . . With an annual budget of $7.5 billion (FY 2017), [the NSF is] the funding source for approximately 24 percent of all federally supported basic research conducted by America's colleges and universities." *About the National Science Foundation*, NAT'L SCI. FOUND., https://www.nsf.gov/about/ (last visited March 7, 2018).

On January 14, 2013, the NSF also awarded Grant No. CBET-1264377, "Multimode Smartphone Biosensor," to the University of Illinois at Urbana-Champaign ("UIUC"), incorporating the 2013 RT&Cs. 10/20/17 Gov't Mot. Ex. 7.

On July 16, 2013, the NSF awarded Grant No. EFRI-1332275, "EFRI-BioFlex: Cellphone-based Digital Immunoassay Platform for High-throughput Sensitive and Multiplexed Detection and Distributed Spatio-Temporal Analysis of Influenza," to the University of California, Los Angeles ("UCLA"), incorporating the 2013 RT&Cs. 10/20/17 Gov't Mot. Ex. 11.

On March 7, 2014, the NSF issued "Research Terms & Conditions" (the "2014 RT&Cs"), to advise recipients that the "NSF cannot assume any liability for accidents, illnesses or claims arising out of any work supported by an award or for unauthorized use of patented or copyrighted materials." 10/20/17 Gov't Mot. Ex. 15 (Article 34).

On June 13, 2014, the NSF awarded Grant No. CBET-1444240, "EAGER: Mobile-phone based single molecule imaging of DNA and length qualification to analyze copy-number variations in genome," to UCLA, incorporating the 2014 RT&Cs. 10/20/17 Gov't Mot. Ex. 10.

On July 3, 2014, the NSF awarded Grant No. CBET-1447893, "EAGER: Lab-in-a-Smartphone," to UIUC, incorporating the 2014 RT&Cs. 10/20/17 Gov't Mot. Ex. 8.

On July 25, 2014, the NSF awarded Grant No. IIP-1450552, "I-Corps: Nanophosphors as Ultra-Sensitive Lateral Flow Reporters in a Lab-on-Phone Platform," to the University of Houston ("UH"), incorporating the 2014 RT&Cs. 10/20/17 Gov't Mot. Ex. 12.

On August 11, 2014, the NSF awarded Grant No. CBET-1343058, "INSPIRE Track 2: Public Health, Nanotechnology, and Mobility (PHeNoM)," to Cornell University ("Cornell"), incorporating the 2014 RT&Cs. 10/20/17 Gov't Mot. Ex. 9.

On December 26, 2014, the NSF issued "Grant General Conditions (GC-1)" (the "2014 GGCs"), to advise recipients that the "NSF cannot assume any liability for accidents, bodily injury, illness, breach of contract, any other damages or loss, or any claims arising out of activities undertaken pursuant to the grant, whether with respect to persons or property of the grantee or third parties." 10/20/17 Gov't Mot. Ex. 15 (Section 45).

On August 6, 2015, the NSF awarded Grant No. 1533983, "PFI: BIC Human-Centered Smart-Integration of Mobile Imaging and Sensing Tools with Machine Learning for Ubiquitous Quantification of Waterborne and Airborne Nanoparticles," to UCLA, incorporating the 2014 GGCs. 10/20/17 Gov't Mot. Ex. 13.

On August 22, 2015, the NSF awarded Grant No. 1534126, "PFI: BIC-Pathtracker: A smartphone-based system for mobile infectious disease detection and epidemiology," to UIUC, incorporating the 2014 GGCs. 10/20/17 Gov't Mot. Ex. 14.

9

### C. National Institutes Of Health Grants.

On February 18, 2014, the National Institutes of Health (the "NIH")[8] awarded Grant No. 1R43AI107984-01A1, "A Sensitive and Serotype-Specific Dengue Diagnostic Test for Low-Resource Setting," to AI Biosciences, Inc. 10/20/17 Gov't Mot. Ex. 19.

On January 20, 2015, the NIH awarded Grant No. 1R43CA193096-01, "KS Detect: A solar-powered and smartphone integrated instrument for point-of-care diagnosis of Kaposi's sarcoma," to A'AS Inc. 10/20/17 Gov't Mot. Ex. 18. This grant was "subject to" 45 C.F.R. § 75.435(h).[9] 10/20/17 Gov't Mot. Ex. 18.

On December 23, 2015, the NIH awarded Grant No. 1R21AI120973-01, "Field-deployable Assay for Differential Diagnosis of Malaria and Viral Febrile Illnesses," to Sandia National Laboratories. 10/20/17 Gov't Mot. Ex. 16. This grant also was "subject to" 45 C.F.R. § 75.435(h). 10/20/17 Gov't Mot. Ex. 16.

On June 20, 2016, the NIH awarded Grant No. 1R01EB021331-01, "FeverPhone: Point of Care Diagnosis of Acute Febrile Illness using a Mobile Device," to Cornell. 10/20/17 Gov't Mot. Ex. 17. And, this grant was "subject to" 45 C.F.R. § 75.435(h). 10/20/17 Gov't Mot. Ex. 17.

## II. PROCEDURAL HISTORY.

On May 1, 2013, Mr. Golden ("Plaintiff") filed a Complaint in the United States Court of Federal Claims (ECF No. 1) ("5/1/13 Compl."), alleging that the United States Department of Homeland Security (the "DHS") infringed the '990 Patent. 5/1/13 Compl. 1–2.

On August 15, 2013, Plaintiff filed a "Notice of Supplement,"[10] providing "supplemental material" to support Plaintiff's May 1, 2013 Complaint. ECF No. 6.

On September 5, 2013, the Government filed a Motion For A More Definite Statement, pursuant to RCFC 12(e), requesting that Plaintiff amend Plaintiff's May 1, 2013 Complaint to incorporate numbered paragraphs, enumerate with particularity the devices or processes that allegedly infringe Plaintiff's patents, and identify the party-in-interest. ECF No. 9.

---

[8] The NIH is "a part of the U.S. Department of Health and Human Services," and "is the largest source of funding for medical research in the world[.]" *Who We Are*, NAT'L INSTS. OF HEALTH, https://www.nih.gov/about-nih/who-we-are (last visited March 7, 2018).

[9] 45 C.F.R. § 75.435(h) provides that the "[c]osts of legal, accounting, and consultant services, and related costs, incurred in connection with patent infringement litigation, are unallowable unless otherwise provided for in the . . . award." 45 C.F.R. § 75.435(h)

[10] The court considered Plaintiff's August 15, 2013 "Notice of Supplement" as an Amended Complaint, filed pursuant to Rule of the United States Court of Federal Claims ("RCFC") 15(a)(1). ECF No. 21 ("On August 15, 2013, Plaintiff filed a Notice of Supplement that the court interprets as an Amended Complaint.").

10

On September 20, 2013, Plaintiff filed: a Motion To Strike Defendant's Motion For A More Definite Statement, pursuant to RCFC 12(f) (ECF No. 10); a Motion To Amend Complaint (ECF No. 11); a Response to the Government's September 5, 2013 Motion For A More Definite Statement (ECF No. 12); a Motion For Summary Judgment (ECF No. 13); and a Motion To Supplement Pleadings. ECF No. 14.

On October 15, 2013, Plaintiff filed a second Response to the Government's September 5, 2013 Motion For A More Definite Statement that the court considered as a Second Amended Complaint, filed with the court's leave, pursuant to RCFC 15(a)(2). ECF No. 19.

On October 21, 2013, the court granted the Government's September 5, 2013 Motion For A More Definite Statement, because Plaintiff's May 1, 2013 Complaint, August 15, 2013 Amended Complaint, and October 15, 2013 Second Amended Complaint were vague and ambiguous making it difficult for the Government to prepare an informed Answer. ECF No. 21. That same day, the Government filed a Response To Plaintiff's Motion For Summary Judgment. ECF No. 22.

On November 22, 2013, Plaintiff filed a More Definite Statement. ECF No. 24.

On December 20, 2013, the court denied Plaintiff's September 20, 2013 Motion For Summary Judgment, without prejudice, since the Government had not filed an Answer. ECF No. 28.

On December 30, 2013, Plaintiff filed a Motion To Amend And Supplement Pleadings Of The More Definite Statement. ECF No. 29.

On January 10, 2014, the Government filed an Answer to Plaintiff's December 30, 2013 Motion To Amend And Supplement Pleadings.[11] ECF No. 30.

On February 7, 2014, the court granted Plaintiff's December 30, 2013 Motion to Amend And Supplement Pleadings and ordered the parties to treat that motion as a Third Amended Complaint, filed by leave of the court, pursuant to RCFC 15(a)(2), superseding all prior complaints. ECF No. 32.

On March 31, 2014, the court issued an Order staying Plaintiff's Fifth Amendment Takings Clause claims and directing the parties to "proceed with Plaintiff's claims only as they relate to the alleged patent infringement by the United States." ECF No. 38.

On April 30, 2014, the DHS filed a petition for an *inter partes review* ("IPR")[12] of the '990 Patent before the USPTO Patent Trial and Appeal Board (the "PTAB").

_____

[11] The Government considered Plaintiff's December 30, 2013 Motion To Amend Pleadings as filed by leave of the court and, therefore, superseded Plaintiff's November 22, 2013 More Definite Statement. ECF No. 30 at n.1.

[12] IPR is "a trial proceeding conducted at the [USPTO] to review the patentability of one or more claims in a patent only on a ground that could be raised under [35 U.S.C.] §§ 102 or 103,

11

On October 8, 2014, the PTAB issued a Decision To Institute IPR of claims 11, 74, and 81 of the '990 Patent. *See Dep't of Homeland Sec. v. Golden,* IPR2014-00714, 2014 WL 6999625, at *1 (P.T.A.B. Oct. 8, 2014). Although the court did not stay this case while the PTAB proceedings were ongoing, the court did not take any substantive action during that time.

On October 1, 2015, the PTAB issued a final decision "grant[ing] Patent Owner's Motion to Amend . . . claims 11, 74, and 81 of the '990 Patent, and den[ying] the Motion to Amend . . . claims 154–156." *See Dep't of Homeland Sec. v. Golden,* IPR2014-00714, 2015 WL 5818910, at *17 (P.T.A.B. Oct. 1, 2015). On November 17, 2015, the PTAB denied Plaintiff's request for a rehearing of the PTAB's decisions. *See Dep't of Homeland Sec. v. Golden,* IPR2014-00714, 2015 WL 10381775 (P.T.A.B. Nov. 17, 2015).

On December 22, 2015, the court convened a telephone status conference to discuss how the case should proceed in light of the PTAB's final decision. ECF No. 67 (transcript). On December 23, 2015, the court issued an Order granting Plaintiff leave to file a fourth amended complaint, pursuant to RCFC 15(a)(2). ECF No. 65.

On February 12, 2016, Plaintiff filed a Fourth Amended Complaint. ECF No. 68. On February 19, 2016, Plaintiff filed a Claim Chart. ECF No. 69.

On April 8, 2016, the Government filed an Answer to Plaintiff's February 12, 2016 Fourth Amended Complaint. ECF No. 74.

On June 3, 2016, Plaintiff filed a Motion For Summary Judgment On Validity. ECF No. 79. On June 6, 2016, Plaintiff filed: a Motion For Response To Claim Charts (ECF No. 80); a Motion To Stay (ECF No. 81); and a Motion For Entry Of Devices. ECF No. 82. On June 8, 2016, Plaintiff filed a Motion For Entry Of Estimated Damages And Accounting Report. ECF No. 84.

On June 10, 2016 the court convened a telephone status conference. ECF No. 87 (transcript). On June 13, 2016, the court issued an Order directing the Government to file a Motion To Dismiss and staying Plaintiff's June 3, 2016 Motion For Summary Judgment and June 8, 2016 Motion For Entry Of Estimated Damages And Accounting Report. ECF No. 85.

On June 24, 2016, the Government filed a Motion To Dismiss Certain Accused Devices. ECF No. 88. On November 30, 2016, the court denied the Government's June 24, 2016 Motion To Dismiss, without prejudice. ECF No. 94.

On December 16, 2016, the court issued a Discovery Order allowing the parties to exchange jurisdictional discovery. ECF No. 97.

On February 3, 2017, the court issued an Order dismissing the following filings by Plaintiff, without prejudice: Plaintiff's June 3, 2016 Motion For Summary Judgment On Validity; Plaintiff's

---

and only on the basis of prior art consisting of patents or printed publications." *Inter Partes Review,* U.S. PATENT & TRADEMARK OFFICE, https://www.uspto.gov/patents-application-process/ appealing-patent-decisions/trials/inter-partes-review (last visited March 12, 2018).

June 6, 2016 Motion For Response To Claim Charts; Plaintiff's June 6, 2016 Motion To Stay; Plaintiff's June 6, 2016 Motion For Entry Of Devices; and Plaintiff's June 8, 2016 Motion For Entry Of Estimated Damages And Accounting Report. ECF No. 100.

On March 1, 2017, and prior to the completion of the court-ordered discovery, Plaintiff filed a Motion For Response To The February 19, 2016 Claim Chart. ECF No. 102. On March 24, 2017, Plaintiff filed a Motion To Supplement Plaintiff's Claim Chart (ECF No. 107) and a Motion To Supplement The Amended Complaint. ECF No. 108. On April 11, 2017, Plaintiff filed a second Motion for Summary Judgment On Validity. ECF No. 111.

On May 15, 2017, Plaintiff filed a "Motion To Supplement The Amended Complaint With Pleadings Of 28 U.S.C. § 1491 'Government Fifth Amendment Takings Of A Patent(s).'" ECF No. 114.

On May 24, 2017, the court convened a telephone status conference, wherein Plaintiff was directed "to file a [Fifth A]mended [C]omplaint that include[d] all of [Plaintiff's] concerns, all of [Plaintiff's] charges against the Government in one document. . . . No more supplements, no more anything else. Whatever is in that document will be what we're going to continue the case on." ECF No. 118.

On May 25, 2017, the court issued an Order denying all of Plaintiff's pending motions, *i.e.*, Plaintiff's March 1, 2017 Motion For Response To Claim Chart; Plaintiff's March 24, 2017 Motion To Supplement Plaintiff's Claim Chart; Plaintiff's March 24, 2017 Motion To Supplement The Amended Complaint; Plaintiff's April 11, 2017 Motion for Summary Judgment On Validity; and Plaintiff's May 15, 2017 Motion To Supplement The Amended Complaint. ECF No. 116. The May 25, 2017 Order also stated that "Plaintiff may amend his complaint and claim chart *one final time*, prior to the court's ruling on jurisdiction. *Plaintiff is ordered not to file any other motions or papers without leave of the court*." ECF No. 116 at 2 (emphasis added).

On August 10, 2017, Plaintiff filed a Fifth Amended Complaint ("8/10/17 Am. Compl.") (ECF No. 120) and a Final Claim Chart. ECF No. 121. Plaintiff's August 10, 2017 Fifth Amended Complaint alleges that the Government: (1) violated the Fifth Amendment of the United States Constitution by taking for public use the '497, '033, '752, '761, '280, '891, '990, '189, and '439 Patents, without just compensation; and (2) is liable for infringement of the '497, '033, '752, '761, '280, '891, '990, '189, and '439 Patents, as well as the '839 Application under 28 U.S.C. § 1498(a). 8/10/17 Am. Compl. ¶¶ 87–92.

On August 24, 2017, Plaintiff sent an email to the Department of Justice (the "DOJ") stating:

> As you know my strategy was to continue submitting claims of "takings" and "infringement" for as long as the Government continued to prolong this case. (Larry Golden v. The United States: Case # 13-307 C). With that said, of course you know the claims ha[ve] moved from twelve (12) claims of "takings" and "infringement" that began in the year 2013, to seventy-two (72) claims of "takings" and "infringement" as of this year 2017.

13

The Judge has ordered a final complaint and a final claim chart that was due on August 15. 2017. Because of the Judge order I can no longer continue my strategy of introducing new "takings" and "infringement" claims or new patents and patent claims.

Therefore, I have changed my strategy. My new strategy is to file a complaint(s) in Federal District Court against Apple, Samsung, LG, Panasonic, and Motorola for Patent infringement on March 1, 2018. The strategy here is to force Apple, Samsung, and LG to decide between one or two choices: (1) In an effort to avoid any responsibility for infringement or liability of paying hundreds of billions of dollars in damages, the companies cho[o]se to throw the Government under the bus by presenting evidence that they were under contract to develop and manufacture devices that infringes my communication / monitoring device. If they cho[o]se this option it makes them a witness for me in my current case (Larry Golden v. The United States; Case # 13-307 C). (2) Deny the allegations of infringement. In this case I will present evidence to support the fact that the companies were under contract with the Government to develop and manufacture devices that infringe[] my communication / monitoring device, but that the companies decided to continue to develop and manufacture my communication / monitoring device beyond the specifications agreed upon with the Government, even after I notified the companies in 2010 to stop their manufacturing. If they chos[o]e this option it opens the companies up to willful infringement and the possibility of a temporary injunction to stop the manufacturing and development of my communication / monitoring device. If you were Apple, Samsung, and LG which option would you cho[o]se.

10/20/17 Gov't Mot. Ex. 1.

On October 20, 2017, the Government filed a Motion For Partial Dismissal ("10/20/17 Gov't Mot."), pursuant to RCFC 12(b)(1) and 12(b)(6). ECF No. 123.

On November 17, 2017, Plaintiff filed a Response And Motion For Leave To File A Motion For Summary Judgment ("11/17/17 Pl. Resp."). ECF No. 124.

On December 18, 2017, the Government filed a Reply And Opposition To Plaintiff's Motion For Leave To File A Motion For Summary Judgment ("12/18/17 Gov't Reply"). ECF No. 125.

On January 8, 2018, Plaintiff filed a Reply ("1/8/18 Pl. Reply"). ECF. No. 126.

## III. STANDARD OF REVIEW.

### A. Jurisdiction.

As a threshold matter, the court must consider jurisdiction before reaching the substantive merits of a case. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have

14

disclaimed or have not presented."). The burden of establishing jurisdiction "lies with the party seeking to invoke the court's jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

## B.      Standard Of Review For A Motion To Dismiss Under RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject-matter jurisdiction").

If a motion to dismiss for lack of subject-matter jurisdiction "challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations . . . then those allegations are taken as true and construed in a light most favorable to the complainant." *Cedars-Sinai Med. Ctr.*, 11 F.3d at 1583. But, if such a motion "denies or controverts the pleader's allegations of jurisdiction, . . . the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Id.* "In such a case, the allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true for purposes of the motion. All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the . . . court." *Id.* at 1583–84 (internal citations omitted); *see also Moyer*, 190 F.3d at 1318 ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged."). The court "may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint." *Ferreiro*, 350 F.3d at 1324; *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) ("If a motion to dismiss for lack of subject matter jurisdiction . . . challenges the truth of the jurisdictional facts alleged in the complaint, the [trial] court may consider relevant evidence in order to resolve the factual dispute."); JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2012) ("[W]hen a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court . . . has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts.").

If the court determines that it does not have subject-matter jurisdiction, the court must dismiss the complaint. *See* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## C.      Standard Of Review For A Motion To Dismiss Under RCFC 12(b)(6).

A claim is subject to dismissal under RCFC 12(b)(6), if it does not provide a basis for the court to grant relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) ("[A well-pleaded complaint] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations omitted)); *see also Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("A motion to dismiss . . . for failure to state a claim upon which

15

relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy.").

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations in a complaint also must establish that there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1062 (Fed. Cir. 2012) (holding that a complaint "require[s] more than labels and conclusions"). To determine whether a complaint states a plausible claim for relief, the court must engage in a context-specific analysis and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Therefore, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

### D.      Standard Of Review For *Pro Se* Litigants.

*Pro se* plaintiffs' pleadings are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). The United States Court of Federal Claims traditionally has examined the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Although the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). ("The fact that [the plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be.").

A *pro se* plaintiff is not excused from satisfying the burden of proof as to jurisdiction, by a preponderance of the evidence. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("[The plaintiff] must allege in his pleading the facts essential to show jurisdiction."); *see also Reynolds*, 846 F.2d at 748 ([The *pro se* plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence."). A *pro se* plaintiff cannot rely solely on conclusory allegations in the complaint, but must allege "competent proof" to establish jurisdiction. *McNutt*, 298 U.S. at 189; *see also Reynolds*, 846 F.2d at 748 ("[I]t was incumbent upon [the *pro se* plaintiff] to come forward with evidence establishing the court's jurisdiction."); *Zulueta v. United States*, 553 F. App'x 983, 985 (Fed. Cir. 2014) ("[T]he leniency afforded to a [*pro se*] litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." (quotation marks omitted)).

16

## IV. DISCUSSION.

### A. Whether Certain Patent Infringement Allegations[13] In The August 10, 2017 Fifth Amended Complaint Should Be Dismissed Under RCFC 12(b)(1) And 12(b)(6).

#### 1. Patent Infringement Allegations In The August 10, 2017 Fifth Amended Complaint.

The August 10, 2017 Fifth Amended Complaint alleges that the Government: (1) violated the Fifth Amendment of the United States Constitution by taking for public use the '497, '033, '752, '761, '280, '891, '990, '189, and '439 Patents, without just compensation; and (2) is liable for infringement of the '497, '033, '752, '761, '280, '891, '990, '189, and '439 Patents, as well as the '839 Application under 28 U.S.C. § 1498(a). 8/10/17 Am. Compl. ¶¶ 87–92. The Fifth Amended Complaint alleges that the court has jurisdiction over the Takings Clause claims under 28 U.S.C. § 1491(a) and over the patent infringement allegations under 28 U.S.C. § 1498(a). 8/10/17 Am. Compl. ¶¶ 3–20.[14]

The August 10, 2017 Fifth Amended Complaint identifies numerous "devices" and "programs"[15] that allegedly were developed or procured, as a result of "contracts, agreements,

---

[13] Hereinafter, the court refers to the patent infringement claims alleged in the August 10, 2017 Fifth Amended Complaint as "patent infringement *allegations*" to avoid confusion with the patent *claims* that are allegedly infringed.

[14] In accordance with the court's March 31, 2014 Order, the court will not rule on the Government's October 20, 2017 Motion For Partial Dismissal regarding Plaintiff's Fifth Amendment Takings Clause claims. ECF No. 38 (stating that "Plaintiff's takings claim[s] should be stayed" and directing the parties to "proceed with Plaintiff's claims only as they relate to the alleged patent infringement by the United States"). Therefore, those portions of the Government's October 20, 2017 Motion For Partial Dismissal relating to Plaintiff's Fifth Amendment Takings Clause claims are denied, without prejudice.

[15] The "devices" and "programs" identified include: Alluviam HazMasterG3; Apple HomeKit; Apple iPhone 5, 5c, 5s, 6, and 6 Plus ("Biodetector"); Apple iPads; Apple Watch; August Connect; "ATHENA;" August Smart Lock; Biomeme two3; Boeing MH-6 Little Bird; "Cell All;" "'COINS' Nano-Embedded Sensors;" DreamHammer Ballista; "EAGER;" Eureka High-Power Electromagnetic System; FePhone; FeverPhone; FLIR identiFINDER R300; Ford MyFord Mobile App; GammaPix; Kromek D3S-ID; Kromek D3S-NET; iControl mLOCK; "INSPIRE;" "Lab-on-a-Drone;" LG Electronics G5 Smartphone; LG Electronics V10 Smartphone; Lockheed Martin K-MAX; MultiRAE Pro; Navy/Marine Corps Intranet; Northrop Grumman X-47B; NutriPhone; Oshkosk TerraMax; Panasonic Toughbook 31 Laptop; PositiveID "Firefly DX;" SiN-VAPOR; Samsung Gear s2; Samsung Galaxy s6 ("BioPhone," "Biotouch System," "Nett Warrior"); Samsung SmartThings Hub; "Smartphone-Based Rapid Diagnostic Tests;" "VOCket System;" Volkswagen Car-Net e-Remote; and Yale Assure Lock.

grants, and procurements" between various federal entities[16] and private parties.[17]  8/10/17 Am. Compl. ¶¶ 91–406.  These "devices" and "programs," independently or in combination, allegedly infringe claims of the '497, '033, '752, '761, '891, '990, '280, '189, and '439 Patents, as well as the '839 Application.  8/10/17 Am. Compl. ¶ 91.  For example, regarding the LG Electronics G5 Smartphone, the Fifth Amended Complaint alleges the following:

> Upon information and belief, the United States has infringed, and continues to infringe, at least claim 22 of the '439 Patent, and claims 18, 118, 12, 28, 25, 30, 22, and 20 of the '990 Patent as a current manufacturer, consumer, and/or user of the "LG Electronics G5 Smartphone".  **Manufacture for the Government**; 2008: The "Cell-All" initiative.  The [DHS-S&T] . . . , Cell-All aims "to equip your cell phone with a sensor capable of detecting deadly chemicals", says Stephen Dennis, Cell-All's program manager.  [DHS-S&T] pursued cooperative agreements with four cell phone manufacturers: Qualcomm, LG, Apple, and Samsung.  **Used by the Government**; 2016: Both the LG G5 and V10 smartphones can be used by the [DOD].  The LG smartphones received a security certification from the U.S. Defense Information Systems Agency [(the "DISA")], as well as a certification by the National Information Assurance Partnership [(the "NIAP")].  Sensors will integrate with 261 million cell phones now used in the U.S. [and l]everage billions of dollars spent each year in sensor, carrier network and cell phone development. Multiple sensors network for chemical profiling; Cell-All aims "to equip your cell phone with a sensor capable of detecting deadly chemicals", says Stephen Dennis,

---

[16] The federal entities identified include: the Department of the Army; the Department of the Air Force; the Department of Defense ("DOD"); the Department of Energy; the DHS; the Department of Homeland Security Science and Technology Directorate ("DHS-S&T"); the DOJ; the Department of the Navy; the Air Force Research Laboratory; the Army Communications-Electronics Research, Development and Engineering Center; the Army Edgewood Chemical Biological Center; the Army Research Laboratory; the Chemical Biological Radiological Nuclear Information Resource Center; the Defense Advanced Research Projects Agency; the Defense Threat Reduction Agency; the Domestic Nuclear Detection Office ("DNDO"); the Environmental Protection Agency; the Federal Emergency Management Agency; the General Services Administration; the Homeland Security Advanced Research Projects Agency; the Integrated Chemical Biological Radiological Nuclear and Explosive Program; the Joint Acquisition Chemical Biological Radiological Nuclear Knowledge System; the Joint Program Executive Office for Chemical and Biological Defense; the National Aeronautics and Space Administration; the Naval Air Systems Command; the Naval Research Laboratory; the NIH; the NSF; the Oak Ridge National Laboratory; and the Office of Naval Research.

[17] The "private parties" identified include: Alluviam LLC; Apple Inc.; Biomeme Inc.; Boeing Company; California Institute of Technology ("Caltech"); Cornell; Eureka Aerospace; "Ford;" Holomic LLC; Kromek Group plc; LG Electronics; Lockheed Martin Corporation; MIT; Motorola, Inc.; Northrop Grumman Corporation; Oshkosh Defense LLC; Panasonic Corporation; Passport Systems, Inc.; PositiveID Corporation; Qualcomm Inc.; Raytheon Ktech; Samsung; Stanford University ("Stanford"); UC Berkeley; UCLA; the University of California, Merced ("UC Merced"); UH; UIUC; and "Volkswagen."

18

Cell-All's program manager. Multiple sensor units per phone are possible. Stephen Dennis envisions a chemical sensor in every cell phone in every pocket, purse, or belt holster.

As a result of contracts, agreements, and procurements with various Government Agencies (¶¶ 49-78), the [DHS], the [DOD], and LG Electronics for the manufacture, development, commercialization, and/or use of the communication/ monitoring device "LG Electronics G5 Smartphone", the United States has used, authorized the use, and manufactured, without license or legal right, **Plaintiff's inventions described in and covered by the '439, and '990 Patents.**

8/10/17 Am. Compl. ¶¶ 93–97 (bold in original).

### 2.     The Government's Argument.

The Government argues that the patent infringement allegations in ¶¶ 91–406 of the August 10, 2017 Fifth Amended Complaint reflect a "deliberate strategy to multiply the proceedings for as long as the [G]overnment . . . resist[s] settlement on Plaintiff's terms." 10/20/17 Gov't Mot. at 2. According to 28 U.S.C. § 1927,[18] parties are prohibited from "multiply[ing] the proceedings in any case unreasonably and vexatiously." 10/20/17 Gov't Mot. at 3. Although some leniency should be afforded a *pro se* plaintiff, such a plaintiff is not exempt from complying with the court's rules. 10/20/17 Gov't Mot. at 3. RCFC 41(b) authorizes the court to dismiss a claim for failure to comply with the court's rules or a court order. 10/20/17 Gov't Mot. at 3. Accordingly, the patent infringement allegations in the Fifth Amended Complaint should be dismissed under RCFC 41(b). 10/20/17 Gov't Mot. at 2–3.

In the alternative, the Government contends that 28 U.S.C. § 1498(a) "provides patent owners with a remedy of damages" in the United States Court of Federal Claims, but only "when the claimed invention is 'used or manufactured by . . . the United States' without a license." 10/20/17 Gov't Mot. at 7 (quoting 28 U.S.C. § 1498(a)). A private party's "use or manufacture" of a claimed invention will be considered a "use or manufacture for the Government" if the use or manufacture is: (1) for the benefit of the Government; and (2) with the Government's "authorization or consent." 10/20/17 Gov't Mot. at 7 (citing *Carrier Corp. v. United States*, 534 F.2d 244, 249 (Ct. Cl. 1976)).

---

[18] 28 U.S.C. § 1927 provides that

[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

19

Regarding the "first requirement," private conduct incidentally benefitting the Government does not constitute use "for the benefit of the Government." 10/20/17 Gov't Mot. at 7 (citing *Sheridan v. United States*, 120 Fed. Cl. 127, 131 (Fed. Cl. 2015) ("Where benefits to the Government are merely an incidental effect of private conduct, they do not constitute 'use or manufacture for the Government' within the meaning of § 1498.")). As to the "second requirement," authorization or consent may be express or, in limited circumstances, implied. 10/20/17 Gov't Mot. at 8. For example, the Government "can provide express authorization and consent . . . by including [an] operative clause in a contract, or providing other formal, written authorization." 10/20/17 Gov't Mot. at 8. In addition, implied authorization may be presumed where there are "contracting officer instructions, [or] . . . specifications[,] or drawings which impliedly sanction and necessitate infringement." 10/20/17 Gov't Mot. at 8 (quoting *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 901 (Ct. Cl. 1976)). Authorization and consent, however, "may be limited by clauses in a contract." 10/20/17 Gov't Mot. at 8 (citing *Carrier Corp.*, 534 F.2d at 249 ("Since Section 1498(a) expressly provides that any use of a patented invention for the Government must be authorized or consented to, it is plain that the Government can limit . . . authorization and consent[.]")).

The court does not have jurisdiction under 28 U.S.C. § 1498(a) to adjudicate patent infringement allegations concerning NSF and NIH grants and cooperative agreements, because any benefit to the Government, at best, would be incidental. 10/20/17 Gov't Mot. at 10–16. In addition, none of the grants or cooperative agreements evidence any "express or implied authorization and consent by the [G]overnment." 10/20/17 Gov't Mot. at 11, 16. In fact, the "expressly incorporated NSF Research Terms & Conditions" explicitly exempt the NSF from liability "for unauthorized use of patented . . . materials." 10/20/17 Gov't Mot. at 13. Similarly, the NIH grants include a reference to 45 C.F.R. Part 75, that "disallows [an] awardee from submitting '[c]osts of legal, accounting, and consultant services, and related costs, incurred in connection with patent infringement litigation [. . .] unless otherwise provided for in the [. . .] award.'" 10/20/17 Gov't Mot. at 14 (quoting 45 C.F.R. § 75.435(h)). Likewise, the award of NSF and NIH grants does not evidence implied authorization, because the Government does not direct or exercise control over the activities of awardees. 10/20/17 Gov't Mot. at 13. Although the cooperative agreements may involve a measure of Government involvement, they do not contain any text evidencing Government "authorization [or] consent to infringe another's patent." 10/20/17 Gov't Mot. at 15–16.

The Government also argues that the Fifth Amended Complaint's "allegations relating generally to smartphones and other consumer devices should be dismissed" under RCFC 12(b)(1) and 12(b)(6), because they fail to allege "actual 'use' by the [G]overnment of the various combinations of consumer devices, nor would the [G]overnment's use be plausible." 10/20/17 Gov't Mot. at 16–17. In addition, the Fifth Amended Complaint "fails to allege that any of these various consumer devices were made for the benefit of the [G]overnment." 10/20/17 Gov't Mot. at 17. The companies referenced in the Fifth Amended Complaint "manufacture, develop, and commercialize their devices in their own economic self-interest." 10/20/17 Gov't Mot. at 17. Moreover, any benefit that the Government might receive does "not constitute use or manufacture for the Government within the meaning of § 1498." 10/20/17 Gov't Mot. at 17–18 (quoting *Sheridan*, 120 Fed. Cl. at 131 (determining that the alleged benefit to the Government of economic "stimulus, jobs, and revenue" was "merely an incidental effect of private conduct, [that does] not

20

constitute 'use or manufacture for the Government' within the meaning of § 1498")). In sum, the Fifth Amended Complaint contains no allegations that the Government actually used or authorized the use of any of the accused devices at issue. 10/20/17 Gov't Mot. at 20. Instead, the Fifth Amended Complaint alleges only that the devices "can be used by the [Government]." 10/20/17 Gov't Mot. at 20 (underline in original).

Other allegations of the Fifth Amended Complaint also should be dismissed, under RCFC 12(b)(1) and 12(b)(6). 10/20/17 Gov't Mot. at 21. First, allegations of infringement "based on a number of devices allegedly developed by third party Passport Systems, Inc. in response to a Broad Agency Announcement ("BAA")" should be dismissed, because "a BAA is not a contract." 10/20/17 Gov't Mot. at 21 (citing 8/10/17 Am. Compl. ¶¶ 161–68). A BAA is "a general announcement of an agency's research interest" and "cannot be said to provide authorization and consent." 10/20/17 Gov't Mot. at 21–22 (quoting 48 C.F.R. § 2.101(b)). Second, patent infringement allegations concerning the '761, '280, and '189 Patents should be dismissed, because the Fifth Amended Complaint alleges no infringement of specific claims of these three patents. 10/20/17 Gov't Mot. at 22–23. Third, as to the '033 Patent, "there is no subject matter jurisdiction under Section 1498, because this patent was surrendered when it was reissued[.]" 10/20/17 Gov't Mot. at 22 (citing 35 U.S.C. § 251(a) ("[T]he Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent[.]")). Fourth, as to the '839 Application, there can be no infringement of unissued claims. 10/20/17 Gov't Mot. at 23 (citing *Stroughter v. United States*, 89 Fed. Cl. 755, 762 (Fed. Cl. 2009) ("Because plaintiffs' claims allege the infringement of unissued patents, the court's jurisdiction under § 1498 is lacking.")). In addition, the allegations of patent infringement of the '439 Patent are based on "activities" that occurred prior to issuance of the '439 Patent and must be dismissed as a matter of law. 10/20/17 Gov't Mot. at 23.

### 3. Plaintiff's Response And Motion For Leave To File A Motion For Summary Judgment.

Plaintiff responds that "[a]fter ten (10) months of jurisdictional discovery, the Government has fail[ed] to introduce any new evidence that supports its 'Motion to Dismiss Certain NSF and NIH Devices[.]'" 11/17/17 Pl. Resp. at 14. The Government's arguments are the same as those presented in the June 24, 2016 Motion To Dismiss. 11/17/17 Pl. Resp. at 14. In sum, "[t]he Government has not shown any disagreement, or has [not] tried to overcome [the court's November 30, 2016] 'Memorandum Opinion and Order Denying Government's Motion To Dismiss.'" 11/17/17 Pl. Resp. at 14. Therefore, "Plaintiff is standing on the [c]ourt's resolution and decision to dismiss." 11/17/17 Pl. Resp. at 14.

In the alternative, Plaintiff "seeks leave to file a motion for summary judgment," pursuant to RCFC 56(e) and 56(f). 11/17/17 Pl. Resp. at 1. Plaintiff contends that the Government is in "contempt of court" for "willfully disobey[ing]" the court's order to file a Motion To Dismiss "based on jurisdiction that was due on October 2, 2017." 11/17/17 Pl. Resp. at 2. Plaintiff "did not object" to the Government's September 15, 2017 request "for an extension of time to respond to Plaintiff's [Fifth] Amended Complaint," because "it was an extension of time . . . to file an answer." 11/17/17 Pl. Resp. at 3 (citing ECF No. 122 (Sept. 19, 2017 Order granting the Government "an additional 18 days to respond to Plaintiff's [Fifth Amended] Complaint")). Instead of filing an answer, the "Government has wasted 16 months of taxpayers' dollars

21

questioning this [c]ourt's jurisdiction[.]" 11/17/17 Pl. Resp. at 3. The Government is also in "contempt of court" for "willfully disobey[ing]" the court's order to "file an answer to Plaintiff's Complaint." 11/17/17 Pl. Resp. at 4–5 (citing ECF No. 122). In addition, the Government is in "contempt of court" for "willfully disobey[ing]" the court's order "NOT to file any additional [m]otions before a decision is made on jurisdiction." 11/17/17 Pl. Resp. at 5 (capitalization and underline in original). But, "[w]ithin the Government's latest 'Motion for Partial Dismissal . . .' filed on 10/20/2017, the Government is asking the [c]ourt to rule on pleadings" that are not related to jurisdiction. 11/17/17 Pl. Resp. at 6. Plaintiff has "[s]uffered [p]rejudice," because of the Government's "[w]illful [c]onduct of [d]elaying." 11/17/17 Pl. Resp. at 8.

### 4. The Government's Reply And Opposition To Plaintiff's Motion For Leave To File A Motion For Summary Judgment.

The Government replies that "Plaintiff offers no rebuttal to the [Fifth] Amended Complaint's failure to plead any facts supporting the jurisdictional prerequisite that the newly accused consumer devices . . . were manufactured for the [G]overnment." 12/18/17 Gov't Reply at 5. "Nor does Plaintiff address the [Fifth] Amended Complaint's failure to allege use by the [G]overnment of accused devices[.]" 12/18/17 Gov't Reply at 5. In fact, "Plaintiff's attempt to drastically expand this case by introducing scores of consumer devices actually reinforces the [G]overnment's arguments for dismissal. Indeed, Plaintiff's bald [allegation] that '[t]he Government cannot use a smartphone of any kind without infringing Plaintiff's claimed invention' demonstrates the implausibility of Plaintiff's allegations of infringement." 12/18/17 Gov't Reply at 5 (underline in original). Plaintiff also "makes no showing that this [c]ourt has jurisdiction over the NSF and NIH awards[,] based on either express or implied authorization and consent." 12/18/17 Gov't Reply at 6. Although, "Plaintiff faults the [G]overnment for allegedly 'fail[ing] to introduce new evidence that supports' its argument that this [c]ourt lacks jurisdiction over the NSF and NIH awards . . . , in doing so, Plaintiff improperly reverses the burden of proving jurisdiction, which remains with Plaintiff." 12/18/17 Gov't Reply at 6 (citing *Sheridan*, 120 Fed. Cl. at 129 ("Subject-matter jurisdiction must be established by the plaintiff at the outset of any case before the Court proceeds to the merits of the action.")). Finally, "Plaintiff's additional evidence . . . and claim charts . . . should be excluded," because "[t]hese exhibits belatedly accuse additional products . . . in contravention of this [c]ourt's May 25, 2017 Scheduling Order, which permitted Plaintiff 'to amend his complaint and claim chart one final time, prior to the court's ruling on jurisdiction,' in which the complaint 'will allege all claims asserted against the Government.'" 12/18/17 Gov't Reply at 7 (quoting ECF No. 116).

In addition, "Plaintiff's demand for 'summary judgment' is improper," as it violates the court's May 25, 2017 Scheduling Order that "plainly and repeatedly prohibited Plaintiff from filing additional motions without first obtaining leave of court." 12/18/17 Gov't Reply at 3 (citing ECF No. 116 ("Plaintiff is ordered not to file any other motions or papers without leave of the court.")). "Styling the paper as one 'seek[ing] leave to file' does not undo Plaintiff's overreach." 12/18/17 Gov't Reply at 3. In addition, "Plaintiff misrepresents the [G]overnment's correspondence with Plaintiff and the [c]ourt to feign surprise by the [G]overnment's motion to dismiss[.]" 12/18/17 Gov't Reply at 3. Specifically, "[o]n September 15, [2017] the [G]overnment wrote to the [c]ourt, copying Plaintiff, that the [G]overnment intended to seek an extension 'to file its Motion to Dismiss.'" 12/18/17 Gov't Reply at 4 (underline in original). Therefore, because "Plaintiff's . . .

22

motion is premised on this misrepresentation . . . , it should be denied." 12/18/17 Gov't Reply at 4. In the alternative, Plaintiff's request for summary judgment is "premature because the case is in the pleadings stage, merits discovery has not yet opened, and the [c]ourt has not yet construed the claim terms." 12/18/17 Gov't Reply at 4 (citing RCFC 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion or deny it[.]")).

### 5.    Plaintiff's Reply.

Plaintiff's reply did not address the Government's arguments concerning the court's jurisdiction to adjudicate the patent infringement allegations of the August 10, 2017 Fifth Amended Complaint.

### 6.    The Court's Resolution.

#### a.    Governing Precedent.

The United States Court of Federal Claims has jurisdiction to adjudicate patent infringement allegations against the Government alleging that "an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same." 28 U.S.C. § 1498(a). In this context, "the use or manufacture of [a patented] invention . . . by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States." *Id.* Accordingly, the United States Court of Federal Claims has jurisdiction to adjudicate patent infringement allegations against the Government "arising upon either . . . of . . . two grounds: (1) unlicensed use or manufacture of a patented invention by the [Government] directly; and/or (2) unlicensed use or manufacture of a patented invention for the [Government] and with [the Government's] authorization or consent." *Hughes Aircraft Co.*, 534 F.2d at 897. As to the second basis for jurisdiction, 28 U.S.C. § 1498(a) "sets forth a two-part test for determining whether th[e] court has jurisdiction . . . over a particular [allegation]." *Id.* "Under this test, a finding of jurisdiction is conditioned upon a showing that[:] (1) the accused use or manufacture was undertaken for the Government, *i.e.*, for the Government's benefit; and (2) the Government gave its authorization or consent for the accused use or manufacture." *Id.* at 897–98.

Regarding the first element, infringing activity has been held to be "for the Government" under 28 U.S.C. § 1498(a), if it is "for the benefit of the Government." *Advanced Software Design Corp. v. Fed. Reserve Bank of St. Louis*, 583 F.3d 1371, 1378 (Fed. Cir. 2009). "Incidental benefit to the [G]overnment is insufficient[.]" *IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359, 1362 (Fed. Cir. 2014) (quotation marks and alterations omitted) (holding that the Government benefited from the examination of passports in "accord[ance with] federal law," because it "improves the detection of fraudulent passports and reduces demands on [G]overnment resources"); *see also Advanced Software Design Corp.*, 583 F.3d at 1378–79 (holding that requiring Federal Reserve Banks to use a certain "seal encoding" system to identify fraudulent bank checks, benefitted the Government by averting fraud and saving resources through the use of more efficient technology); *Hughes Aircraft Co.*, 534 F.2d at 897–99 (holding that the Government's participation in the

Skynet II satellite program was "for the Government," because the program was vital to the military defense and security of the United States).

Regarding the second element, "authorization or consent of the Government" may be express or implied. *See TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1060 (Fed. Cir. 1986) ("Authorization or consent by the Government can be expressed . . . [or i]n proper circumstances, Government authorization can be implied."); *see also Hughes Aircraft Co.*, 534 F.2d at 901 (holding that implied authorization may be presumed when the Government provides "instructions, . . . specifications[,] or drawings which impliedly sanction and necessitate infringement"); *IRIS Corp.*, 769 F.3d at 1362 (holding that "the [G]overnment . . . clearly provided its authorization or consent[,] because [the contractor] . . . [could ]not comply with its legal obligations without engaging in the allegedly infringing activities"); *Larson v. United States*, 26 Cl. Ct. 365, 370 (Cl. Ct. 1992) (holding that implied authorization or consent "may be found under the following conditions: (1) the [G]overnment expressly contracted for work to meet certain specifications; (2) the specifications cannot be met without infringing on a patent; and (3) the [G]overnment had some knowledge of the infringement"). In addition, the Government "can limit its authorization and consent" by "inclusion . . . of a standard clause [that] limits the Government's authorization and consent[.]" *Carrier Corp.*, 534 F.2d at 247–49 ("Since Section 1498(a) expressly provides that any use of a patented invention for the Government must be authorized or consented to, it is plain that the Government can limit . . . authorization and consent[.]").

### b. Patent Infringement Allegations Concerning National Science Foundation Grants And Cooperative Agreements Must Be Dismissed Under RCFC 12(b)(1).

#### i. Regarding National Science Foundation Grants.

The Government argues that patent infringement allegations[19] concerning the nine NSF grants[20] should be dismissed under RCFC 12(b)(1), because: (1) in general, grants "by their nature . . . carry out an attenuated public purpose . . . instead of acquiring property or services for the direct benefit or use of the [G]overnment;" and (2) the NSF grants "are entirely devoid of express or implied authorization and consent by the [G]overnment." 10/20/17 Gov't Mot. at 11 (underline in original).

---

[19] The paragraphs in the Fifth Amended Complaint that include patent infringement allegations concerning the NSF grants are: ¶¶ 184–85, 199–200, 235–36, 260–61, 265–66, 270–71, 275–76, 280–81, 285–86, 290–91, 295–96, 300–01, 305–06, and 350–51. These paragraphs are highlighted in yellow in the attached Court Exhibit B.

[20] The nine NSF grants are: Grant No. CCF-1029585 (10/20/17 Gov't Mot. Ex. 6); Grant No. CBET-1264377 (10/20/17 Gov't Mot. Ex. 7); Grant No. CBET-1447893 (10/20/17 Gov't Mot. Ex. 8); Grant No. CBET-1343058 (10/20/17 Gov't Mot. Ex. 9); Grant No. CBET-1444240 (10/20/17 Gov't Mot. Ex. 10); Grant No. EFRI-1332275 (10/20/17 Gov't Mot. Ex. 11); Grant No. IIP-1450552 (10/20/17 Gov't Mot. Ex. 12); Grant No. 1533983 (10/20/17 Gov't Mot. Ex. 13); and Grant No. 1534126 (10/20/17 Gov't Mot. Ex. 14).

The Fifth Amended Complaint alleges the following with respect to Grant No. CCF-1029585:

> Upon information and belief, the United States has infringed, and continues to infringe, at least claim 13 of the '439 Patent, and claims 18, 118, 12, 28, 25, 20, 32, and 30 of the '990 Patent as a current manufacturer, consumer, and/or user of the Samsung Galaxy s6 "BioPhone". The Samsung Galaxy s6 "Bio Phone" smartphone can measure your heart and breathing rates, even if you're not directly touching it. Researchers at MIT are working on a project called BioPhone that derives biological signals from your smartphone's accelerometer, which they say can capture the small movements of your body that result from the beating of your heart and rising and falling of your chest. This information is useful to base medical diagnoses in real-life conditions and to help track chronic health conditions and effects of therapeutic interventions. Research is based upon work supported by the [NSF] (NSF CCF-1029585), Samsung, and the MIT Media Lab Consortium.

> As a result of contracts[21] with the . . . [NSF], Samsung Group, and the MIT Media Lab Consortium for the development and commercialization of the Samsung Galaxy s6 "BioPhone", and the "Samsung Electronic Communications Device", the United States has used, authorized the use, and manufactured, without license or legal right, Plaintiff's inventions described in and covered by the '439, and '990 Patents.

8/10/17 Am. Compl. ¶¶ 199–200.

The Fifth Amended Complaint contains patent infringement allegations arising from the award of the other NSF grants, each of which repeats the text of 28 U.S.C. § 1498(a) in conclusively alleging that, "[a]s a result of contracts with the [NSF] . . . the United States has used, authorized the use, and manufactured . . . Plaintiff's inventions" as "a current manufacturer, consumer, and/or user" of the "devices" or "programs" developed under the NSF grants. 8/10/17 Am. Compl. ¶¶ 184–85, 199–200, 235–36, 260–61, 265–66, 270–71, 275–76, 280–81, 285–86, 290–91, 295–96, 300–01, 305–06, 350–51. The Fifth Amended Complaint, however, does not contain "the necessary supporting or primary facts sufficient" to support this conclusion. *See Hebern v. United States*, 132 Ct. Cl. 344, 348–49 (Ct. Cl. 1955). Instead, the Fifth Amended Complaint implies "direct" use or manufacture by the Government, based solely on the NSF's funding the development of allegedly infringing "devices" or "programs." 8/10/17 Am. Compl. ¶ 200 ("*As a result of* contracts," *i.e.*, the NSF grants, "the United States has used, authorized the use, and manufactured . . . Plaintiff's inventions[.]" (emphasis added)). Funding alone, however, does not establish "direct" use or manufacture of "Plaintiff's inventions" by the

---

[21] The Fifth Amended Complaint's characterization of a NSF grant as a contract is incorrect. *Compare* 31 U.S.C. § 6304 ("An executive agency shall use a grant agreement . . . when . . . substantial involvement is not expected between the executive agency and the . . . recipient when carrying out the activity contemplated in the agreement."), *with* 31 U.S.C. § 6303 (describing the circumstances, inapplicable here, under which agencies are required to use "procurement contracts").

25

NSF, *see Capitol Boulevard Partners v. United States*, 31 Fed. Cl. 758, 761 (Fed. Cl. 1994) (determining that, with regard to federal grants, "the [G]overnment does not procure any property or services for its direct use, rather it provides funding"); and the Fifth Amended Complaint's conclusory allegations are not sufficient to establish jurisdiction. *See Norton v. Larney*, 266 U.S. 511, 515 (1925) ("It is quite true that the jurisdiction of a federal court must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings.").

The Fifth Amended Complaint also fails to allege that "the accused use or manufacture was undertaken . . . for the Government's benefit." *See Hughes Aircraft Co.*, 534 F.2d at 897. The Fifth Amended Complaint contains no factual allegations establishing anything more than "incidental benefit" to the NSF. *See Advanced Software Design Corp.*, 583 F.3d at 1379 (holding that "an interest in [a] program generally, or [where the Government] funds or reimburses all or part of [a program's] costs, is too remote to make the [G]overnment the program's beneficiary for the purposes underlying § 1498" (quoting *Larson*, 26 Cl. Ct. at 369)); *see also IRIS Corp.*, 769 F.3d at 1362 ("Incidental benefit to the [G]overnment is insufficient" to satisfy the requirements of 28 U.S.C. § 1498(a).).

Nor does the Fifth Amended Complaint allege that "the Government gave its authorization or consent for the accused use or manufacture." *See Hughes Aircraft Co.*, 534 F.2d at 897. The Fifth Amended Complaint does not contain any factual allegations establishing that the NSF, at any time, authorized or consented to infringing use or manufacture. For example, the Fifth Amended Complaint does not cite any portions of the NSF grants or communications between the NSF and grant awardees "expressly" or "implicitly" authorizing infringing conduct. *See Larson*, 26 Cl. Ct. at 369–70 ("[A]uthorization or consent requires explicit acts or extrinsic evidence sufficient to prove the [G]overnment's intention to accept liability for a specific act of infringement."). Nor does the Fifth Amended Complaint include any factual allegations that could be construed as "express" or "implicit" authorization or consent by the NSF to infringe Plaintiff's patents. *See Hughes Aircraft Co.*, 534 F.2d at 901 (holding that implied authorization may be presumed when the Government provides "instructions, . . . specifications[,] or drawings which impliedly sanction and necessitate infringement"); *see also IRIS Corp.*, 769 F.3d at 1362 (holding that "the [G]overnment . . . clearly provided its authorization or consent[,] because [the contractor] . . . cannot comply with its legal obligations without engaging in the allegedly infringing activities"). Instead, each of the NSF grants incorporated a standard clause advising that the NSF "cannot assume any liability for . . . claims arising out of any work supported by an award for unauthorized use of patented . . . materials" or, more generally, "with respect to . . . property of . . . third parties." 10/20/17 Gov't Mot. Ex. 15. Therefore, awardees were warned that the use of "property of . . . third parties," including "patented . . . materials," was "unauthorized." *See Carrier Corp.*, 534 F.2d at 247–49 (holding that the Government "can limit . . . authorization and consent" by "inclusion . . . of a standard clause [that] limits the Government's authorization and consent").

For these reasons, the court has determined that the patent infringement allegations contained in ¶¶ 184–85, 199–200, 235–36, 260–61, 265–66, 270–71, 275–76, 280–81, 285–86, 290–91, 295–96, 300–01, 305–06, and 350–51 of the August 10, 2017 Fifth Amended Complaint

failed to satisfy Plaintiff's burden to establish jurisdiction under 28 U.S.C. § 1498(a). Accordingly, these paragraphs of the Fifth Amended Complaint must be dismissed under RCFC 12(b)(1).

### ii. Regarding National Science Foundation Cooperative Agreements.

The Government also argues that patent infringement allegations[22] concerning the two NSF cooperative agreements[23] should be dismissed under RCFC 12(b)(1). 10/20/17 Gov't Mot. at 15.

The Fifth Amended Complaint alleges the following with respect to the NSF cooperative agreements:

> Upon information and belief, the United States has infringed, and continues to infringe, at least claim 13 of the '439 Patent, and claims 18, 118, 12, 28, 25, 20, 32, and 30 of the '990 Patent as a current manufacturer, consumer, and/or user of the "COINS" Nano-Embedded Sensors for Smartphones: The Center of Integrated Nanomechanical Systems (COINS) is a multidisciplinary nanoscale science and engineering center (NSEC) funded by the [NSF] with its headquarters at [UC Berkeley] and satellite campuses at Stanford, Caltech, and [UC Merced]. The goal of COINS is to develop and integrate cutting-edge nanotechnologies into a versatile platform with various ultra-sensitive, ultra-selective, self-powering, mobile, wirelessly communicating detection applications; develop novel low-power, low-cost, selective nanomaterials-enable sensing systems for real-time detection of explosives, toxicants, and radiation and interface Nano-enable sensors with smart phones, eventually becoming embedded in the device.

> As a result of contracts[24] with the [NSF], the Center of Integrated Nanomechanical Systems (COINS), [UC Berkeley], Stanford, Caltech, [UC Merced], and Apple Inc. for the development and commercialization of the "COINS" Nano-Embedded Sensors for Smartphones, and the "Apple Inc.'s Electronic Communications Device", the United States has used, authorized the

---

[22] The paragraphs in the Fifth Amended Complaint that include patent infringement allegations concerning the NSF cooperative agreements are: ¶¶ 194–95. These paragraphs are highlighted in green in the attached Court Exhibit B.

[23] The two NSF cooperative agreements are: Award No. 0425914 (10/20/17 Gov't Mot. Ex. 20) and Award No. 0832819 (10/20/17 Gov't Mot. Ex. 21).

[24] The Fifth Amended Complaint's characterization of a NSF cooperative agreement as a contract is incorrect. *Compare* 31 U.S.C. § 6305 (describing the circumstances under which agencies are required to use a "cooperative agreement"), *with* 31 U.S.C. § 6303 (describing the circumstances, inapplicable here, under which agencies are required to use "procurement contracts").

27

use, and manufactured, without license or legal right, Plaintiff's inventions described in and covered by the '439 and '990 Patents.

8/10/17 Am. Compl. ¶¶ 194–95.

The Fifth Amended Complaint, however, does not contain "the necessary supporting or primary facts sufficient to allege" that the Government "used, authorized the use, and manufactured . . . Plaintiffs inventions," as a result of the NSF cooperative agreements. *See Hebern*, 132 Ct. Cl. at 348–49. Instead, the Fifth Amended Complaint implies "direct" use or manufacture by the Government, based solely on the NSF's funding the development of allegedly infringing "devices" or "programs." 8/10/17 Am. Compl. ¶ 194 ("The Center of Integrated Nanomechanical Systems (COINS) is a multidisciplinary nanoscale science and engineering center (NSEC) *funded* by the [NSF.]" (emphasis added)). Funding alone, however, does not establish "direct" use or manufacture of "Plaintiff's inventions" by the NSF. *See Capitol Boulevard Partners*, 31 Fed. Cl. at 761. Although cooperative agreements entail some greater involvement by the NSF than grants, that fact also does not establish "direct" use or manufacture by the NSF; and the Fifth Amended Complaint failed to allege any other involvement by the NSF. *Compare* 31 U.S.C. § 6305 ("An executive agency shall use a cooperative agreement . . . when . . . substantial involvement is expected between the executive agency and the . . . recipient when carrying out the activity contemplated in the agreement."), *with* 31 U.S.C. § 6304 ("An executive agency shall use a grant agreement . . . when . . . substantial involvement is not expected between the executive agency and the . . . recipient when carrying out the activity contemplated in the agreement."). Nor does the Fifth Amended Complaint cite any portions of the NSF cooperative agreements or communications between the NSF and cooperative agreement awardees from which the court reasonably could infer "direct" use or manufacture by the NSF; and the Fifth Amended Complaint's conclusory allegations are not sufficient to establish jurisdiction. *See Norton*, 266 U.S. at 515 ("It is quite true that the jurisdiction of a federal court must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings.").

The Fifth Amended Complaint also fails to allege that "the accused use or manufacture was undertaken . . . for the Government's benefit." *See Hughes Aircraft Co.*, 534 F.2d at 897. The Fifth Amended Complaint contains no factual allegations establishing anything more than "incidental benefit" to the Government. *See Advanced Software Design Corp.*, 583 F.3d at 1379 (holding that "an interest in [a] program generally, or [where the Government] funds or reimburses all or part of [a program's] costs, is too remote to make the [G]overnment the program's beneficiary for the purposes underlying § 1498" (quoting *Larson*, 26 Cl. Ct. at 369)); *see also IRIS Corp.*, 769 F.3d at 1362 ("Incidental benefit to the [G]overnment is insufficient" to satisfy the requirements of 28 U.S.C. § 1498(a).). Moreover, although cooperative agreements entail some greater involvement by the NSF than grants, the purpose is the same, *i.e.*, "to transfer a thing of value . . . *instead of acquiring . . . property or services for the direct benefit or use of the . . . Government.*" 31 U.S.C. § 6305 (emphasis added); *see also* 31 U.S.C. § 6304 ("[T]he principal purpose of [a grant agreement] is to transfer a thing of value . . . instead of acquiring . . . property or services for the direct benefit or use of the . . . Government.").

Nor does the Fifth Amended Complaint allege that "the Government gave its authorization or consent for the accused use or manufacture." *See Hughes Aircraft Co.*, 534 F.2d at 897. The

28

Fifth Amended Complaint does not contain any factual allegations establishing that the NSF, at any time, authorized or consented to infringing use or manufacture. For example, the Fifth Amended Complaint does not cite any portions of the NSF cooperative agreements or communications between the NSF and cooperative agreement awardees "expressly" or "implicitly" authorizing infringing conduct. *See Larson*, 26 Cl. Ct. at 369–70 ("[A]uthorization or consent requires explicit acts or extrinsic evidence sufficient to prove the [G]overnment's intention to accept liability for a specific act of infringement."). Nor does the Fifth Amended Complaint include any factual allegations that could be construed as "express" or "implied" authorization or consent by the NSF to infringe Plaintiff's patents. *See Hughes Aircraft Co.*, 534 F.2d at 901 (holding that implied authorization may be presumed when the Government provides "instructions, . . . specifications[,] or drawings which impliedly sanction and necessitate infringement"); *see also IRIS Corp.*, 769 F.3d at 1362 (holding that "the [G]overnment . . . clearly provided its authorization or consent[,] because [the contractor] . . . cannot comply with its legal obligations without engaging in the allegedly infringing activities"). Instead, each of the NSF cooperative agreements incorporated a standard clause advising that the NSF "cannot assume any liability for . . . claims arising out of, or related to, . . . [the] unauthorized use of patented . . . materials." 10/20/17 Gov't Mot. Ex. 15. Therefore, awardees were warned that the use of "patented . . . materials" was "unauthorized." *See Carrier Corp.*, 534 F.2d at 247–49 (holding that the Government "can limit . . . authorization and consent" by "inclusion . . . of a standard clause [that] limits the Government's authorization and consent").

For these reasons, the court has determined that the patent infringement allegations contained in ¶¶ 194–95 of the August 10, 2017 Fifth Amended Complaint failed to satisfy Plaintiff's burden to establish jurisdiction under 28 U.S.C. § 1498(a). Accordingly, these paragraphs of the Fifth Amended Complaint must be dismissed under RCFC 12(b)(1).

### c. Patent Infringement Allegations Concerning National Institutes Of Health Grants Must Be Dismissed Under RCFC 12(b)(1).

The Government also argues that patent infringement allegations[25] concerning the four NIH grants[26] should be dismissed under RCFC 12(b)(1). 10/20/17 Gov't Mot. at 14–15.

The Fifth Amended Complaint alleges the following with respect to Grant No. 1R21AI120973:

> Upon information and belief, the United States has infringed, and continues to infringe, at least claim 20 of the '439 Patent, claim 34 of the '752 patent, and

---

[25] The paragraphs in the Fifth Amended Complaint that include patent infringement allegations concerning the NIH grants are: ¶¶ 335–36, 355–56, 360–61, and 365–66. These paragraphs are highlighted in blue in the attached Court Exhibit B.

[26] The four NIH grants are: Grant No. 1R21AI120973-01 (10/20/17 Gov't Mot. Ex. 16); Grant No. 1R01EB021331-01 (10/20/17 Gov't Mot. Ex. 17); Grant No. 1R43CA193096-01 (10/20/17 Gov't Mot. Ex. 18); and Grant No. 1R43AI107984-01A1 (10/20/17 Gov't Mot. Ex. 19).

29

claims 118, 18, 92, 25, and 124 of the '990 Patent as a current manufacturer, consumer, and/or user of the "FeverPhone" that is interconnected to the Apple iPhone. Cornell['s] David Erickson, a mechanical engineer, and Saurabh Mehta, a physician and nutrition researcher. The [NIH] . . . has awarded to Cornell a four-year, $2.3 million grant to develop FeverPhone, which will diagnose six febrile diseases in the field: dengue, malaria, chikungunya, typhoid fever, leptospirosis and Chagas' disease. FeverPhone—hardware and software, working in combination with a smartphone or tablet—will provide a real-time, rapid and accurate diagnosis using a drop of blood to differentiate and identify specific pathogens. While the Zika virus was not included in this specific grant, as the application was submitted before the current outbreak, the technology potentially can be expanded to include it. "FeverPhone," a smartphone based molecular diagnostics platform for point-of-care differential diagnosis of six common causes of acute febrile illness includes: (1) a specialized 6-plexed colorimetric IgM/IgG assay cartridge that exploits color discrimination assay on mobile devices, (2) associated iPad based hardware that allows rapid interpretation of the cartridge results, and (3) software that combines differential molecular diagnosis with a confirmatory symptomatic interface.

As a result of contracts[27] with the [NIH] . . . , Cornell . . . , and Apple Inc. for the development and commercialization of the "FeverPhone" and the "Apple Inc.'s Electronic Communications Device" the United States has used, authorized the use, and manufactured, without license or legal right, Plaintiff's inventions described in and covered by the '439, '752, and '990 Patents.

8/10/17 Am. Compl. ¶¶ 355–56.

The Fifth Amended Complaint contains patent infringement allegations arising from the award of the other NIH grants, each of which repeats the text of 28 U.S.C. § 1498(a) in conclusively alleging that, "[a]s a result of contracts with the [NIH] . . . the United States has used, authorized the use, and manufactured . . . Plaintiff's inventions" as "a current manufacturer, consumer, and/or user" of the "devices" or "programs" developed under the NIH grants. 8/10/17 Am. Compl. ¶¶ 336, 356, 361, 366. The Fifth Amended Complaint, however, does not contain "the necessary supporting or primary facts sufficient" to support this conclusion. See Hebern, 132 Ct. Cl. at 348–49. Instead, the Fifth Amended Complaint implies "direct" use or manufacture by the Government, based solely on the NIH's funding the development of allegedly infringing "devices" or "programs." 8/10/17 Am. Compl. ¶ 356 ("As a result of contracts," i.e., the NIH grants, "the United States has used, authorized the use, and manufactured . . . Plaintiff's inventions[.]" (emphasis added)). Funding alone, however, does not establish "direct" use or manufacture of "Plaintiff's inventions" by the NIH, see Capitol Boulevard Partners, 31 Fed. Cl. at 761 (determining that, with regard to federal grants, "the [G]overnment does not procure any property or services for its direct use, rather it provides funding"); and the Fifth Amended Complaint's conclusory allegations are not sufficient to establish jurisdiction. See Norton, 266

---

[27] As previously explained, the Fifth Amended Complaint's characterization of a NIH grant as a contract is incorrect. See 31 U.S.C. §§ 6303–6304 (distinguishing between grant agreements and procurement contracts).

30

U.S. at 515 ("It is quite true that the jurisdiction of a federal court must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings.").

The Fifth Amended Complaint also fails to allege that "the accused use or manufacture was undertaken . . . for the Government's benefit." *See Hughes Aircraft Co.*, 534 F.2d at 897. The Fifth Amended Complaint contains no factual allegations establishing more than "incidental benefit" to the Government. *See Advanced Software Design Corp.*, 583 F.3d at 1379 (holding that "an interest in [a] program generally, or [where the Government] funds or reimburses all or part of [a program's] costs, is too remote to make the [G]overnment the program's beneficiary for the purposes underlying § 1498" (quoting *Larson*, 26 Cl. Ct. at 369)); *see also IRIS Corp.*, 769 F.3d at 1362 ("Incidental benefit to the [G]overnment is insufficient" to satisfy the requirements of 28 U.S.C. § 1498(a).).

Nor does the Fifth Amended Complaint allege that "the Government gave its authorization or consent for the accused use or manufacture." *See Hughes Aircraft Co.*, 534 F.2d at 897. The Fifth Amended Complaint does not contain any factual allegations establishing that the NIH, at any time, authorized or consented to infringing use or manufacture. For example, the Fifth Amended Complaint does not cite any portions of the NIH grants "expressly" or "implicitly" authorizing infringing conduct. *See Larson*, 26 Cl. Ct. at 369–70 ("[A]uthorization or consent requires explicit acts or extrinsic evidence sufficient to prove the [G]overnment's intention to accept liability for a specific act of infringement."). Nor does the Fifth Amended Complaint include any factual allegations that could be construed as "express" or "implied" authorization or consent by the NIH to infringe Plaintiff's patents. *See Hughes Aircraft Co.*, 534 F.2d at 901 (holding that implied authorization may be presumed when the Government provides "instructions, . . . specifications[,] or drawings which impliedly sanction and necessitate infringement"); *see also IRIS Corp.*, 769 F.3d at 1362 (holding that "the [G]overnment . . . clearly provided its authorization or consent[,] because [the contractor] . . . cannot comply with its legal obligations without engaging in the allegedly infringing activities"). Instead, three of the NIH grants were "subject to" 45 C.F.R. § 75.435(h), that provides that "[c]osts of legal . . . services, and related costs, incurred in connection with patent infringement litigation, are unallowable unless otherwise provided for in the . . . award." 45 C.F.R. § 75.435(h). Although the text of 45 C.F.R. § 75.435(h) does not directly pertain to the NIH's authorization or consent, it does bolster the conclusion that the NIH grants are devoid of express or implied authorization or consent.

For these reasons, the court has determined that the patent infringement allegations contained in ¶¶ 335–36, 355–56, 360–61, and 365–66 of the August 10, 2017 Fifth Amended Complaint failed to satisfy Plaintiff's burden to establish jurisdiction under 28 U.S.C. § 1498(a). Accordingly, these paragraphs of the Fifth Amended Complaint must be dismissed under RCFC 12(b)(1).

31

**d.** **Patent Infringement Allegations Concerning The Government's Alleged Use Of "Smartphones And Other Consumer Devices" Must Be Dismissed Under RCFC 12(b)(1) And 12(b)(6).**

The Government argues that patent infringement allegations[28] "relating generally to smartphones and other consumer devices" should be dismissed under RCFC 12(b)(1), because the Fifth Amended Complaint "fails to sufficiently allege actual 'use' by the [G]overnment of the various combinations of consumer devices, nor would the [G]overnment's use be plausible." 10/20/17 Gov't Mot. at 17.

The Fifth Amended Complaint alleges the following with respect to the "LG Electronics G5 Smartphone":

> Upon information and belief, the United States has infringed, and continues to infringe, at least claim 22 of the '439 Patent, and claims 18, 118, 12, 28, 25, 30, 22, and 20 of the '990 Patent as a current manufacturer, consumer, and/or user of the "LG Electronics G5 Smartphone". **Manufacture for the Government**; 2008: The "Cell-All" initiative. The [DHS-S&T] . . . , Cell-All aims "to equip your cell phone with a sensor capable of detecting deadly chemicals", says Stephen Dennis, Cell-All's program manager. [DHS-S&T] pursued cooperative agreements with four cell phone manufacturers: Qualcomm, LG, Apple, and Samsung. **Used by the Government**; 2016: Both the LG G5 and V10 smartphones can be used by the [DOD]. The LG smartphones received a security certification from the [DISA], as well as a certification by the [NIAP]. Sensors will integrate with 261 million cell phones now used in the U.S. [and l]everage billions of dollars spent each year in sensor, carrier network[,] and cell phone development. Multiple sensors network for chemical profiling; Cell-All aims "to equip your cell phone with a sensor capable of detecting deadly chemicals", says Stephen Dennis, Cell-All's program manager. Multiple sensor units per phone are possible. Stephen Dennis envisions a chemical sensor in every cell phone in every pocket, purse, or belt holster.

> As a result of contracts, agreements, and procurements with various Government Agencies (¶¶ 49-78), the [DHS], the [DOD], and LG Electronics for the manufacture, development, commercialization, and/or use of the communication/monitoring device "LG Electronics G5 Smartphone", the United States has used, authorized the use, and manufactured, without license or legal right, Plaintiff's inventions described in and covered by the '439, and '990 Patents.

8/10/17 Am. Compl. ¶¶ 96–97 (bold in original).

---

[28] The paragraphs in the Fifth Amended Complaint that include patent infringement allegations "relating generally to smartphones and other consumer devices" are: ¶¶ 96–97, 101–02, 106–07, 111–12, 116–17, 121–22, 126–27, 131–32, 136–37, 141–42, 146–47, and 151–52. These paragraphs are highlighted in orange in the attached Court Exhibit B.

The Fifth Amended Complaint includes patent infringement allegations concerning the Government's alleged "use" and "manufacture" of other "smartphones [and] consumer devices," each of which repeats the text of 28 U.S.C. § 1498(a) in conclusively alleging that, "[a]s a result of contracts, agreements, and procurements with various Government Agencies (¶¶ 49-78) . . . the United States has used, authorized the use, and manufactured . . . Plaintiff's inventions[.]'" 8/10/17 Am. Compl. ¶¶ 97, 102, 107, 112, 117, 122, 127, 132, 137, 142, 147, 152. To support this allegation, the Fifth Amended Complaint repeatedly cites to ¶¶ 49–78 of the Fifth Amended Complaint. These paragraphs describe the Government's intent to "allow" or "approve" the "use" of various "smartphones and other consumer devices," *e.g.*, "the iPhone 5c and 5s." 8/10/17 Am. Compl. ¶ 75. For example, ¶ 53 of the Fifth Amended Complaint states:

> 2012: "The [DOD] expects in coming weeks to grant two separate *security approvals* for Samsung's Galaxy smartphones, along with iPhones and iPads running Apple's latest operating system—moves that would boost the number of U.S. government agencies *allowed* to use those devices. An *approval* by the Pentagon is considered as the highest standard[] in security."

8/10/17 Am. Compl. ¶ 53 (emphasis added).

Similarly, ¶ 72 of the Fifth Amended Complaint states:

> 2014: "By opening its networks to Samsung and Apple devices, [DISA] . . . intends to broaden the variety of mobile computers that troops and civilian [DOD] employees *can use* in the field, on bases, in offices and elsewhere to receive and send information and work almost anywhere at any time."

8/10/17 Am. Compl. ¶ 72 (emphasis added).

The Fifth Amended Complaint, however, does not allege that the Government's intent to "allow" or "approve" the use of "smartphones and other consumer devices" infringes Plaintiff's patents. Instead, the Fifth Amended Complaint alleges that the Government's use of these devices *in combination with* other "devices" or "programs," *e.g.*, the "'Cell-All' initiative," infringes Plaintiff's patents. 8/10/17 Am. Compl. ¶¶ 96–97. No factual allegations, however, support assuming that the Government used or authorized the use of these other "devices" or "programs" to infringe Plaintiff's patents.

For example, although the Fifth Amended Complaint alleges that the "LG Electronics G5 Smartphone . . . can be used" by the Government, such an allegation does not support the conclusion that the Government used or authorized the use of these devices to run the "'Cell-All' initiative." 8/10/17 Am. Compl. ¶¶ 96–97. Nor do such allegations imply that the Government's use of the "LG Electronics G5 Smartphone" infringes Plaintiff's patents, since the Government may simply use these devices to make calls. Without supporting factual allegations, however, the court cannot assume infringing use or manufacture by the Government. *See Norton*, 266 U.S. at 515 ("It is quite true that the jurisdiction of a federal court must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings."); *see also* 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRACTICE & PROCEDURE § 1350 (3d ed. 2004) ("[A]rgumentative (as opposed to reasonable) inferences

33

favorable to the pleader will not be drawn and conclusory allegations or conclusions of law will not be credited."). In sum, although the factual allegations of the Fifth Amended Complaint may support a conclusion that the Government "allowed" or "approved" the "use" of various "smartphones and other consumer devices," they do not support the conclusion that the Government used or authorized the use of these devices in an infringing manner.

For these reasons, the court has determined that the patent infringement allegations contained in ¶¶ 96–97, 101–02, 106–07, 111–12, 116–17, 121–22, 126–27, 131–32, 136–37, 141–42, 146–47, and 151–52 of the August 10, 2017 Fifth Amended Complaint failed to satisfy Plaintiff's burden to establish jurisdiction under 28 U.S.C. § 1498(a). Accordingly, these paragraphs of the Fifth Amended Complaint must be dismissed under RCFC 12(b)(1).

In the alternative, the Government argues that the same allegations should be dismissed under RCFC 12(b)(6), for "improperly alleg[ing] infringement by or for the [G]overnment in irreconcilably vague and omnibus fashion by repeatedly citing 'contracts, agreements, and procurements with various Government Agencies.'" 10/20/17 Gov't Mot. at 17.

The Government's position is correct, because the Fifth Amended Complaint does not contain factual allegations supporting that, "[a]s a result of *contracts, agreements, and procurements* with various Government Agencies . . . the United States has used, authorized the use, and manufactured . . . Plaintiff's inventions[.]" 8/10/17 Am. Compl. ¶ 97 (emphasis added). The Fifth Amended Complaint fails to identify the "contracts, agreements, and procurements" at issue. Without more, the Fifth Amended Complaint has not met the requirements of *Twombly* and *Iqbal*. Nor does the Fifth Amended Complaint provide anything other than conclusory allegations that the Government used or authorized the use of "smartphones and other consumer devices" in a manner that infringes Plaintiff's patents. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [however,] do not suffice." *Iqbal*, 556 U.S. at 678; *see also Sioux Honey Ass'n*, 672 F.3d at 1062 (holding that a complaint "require[s] more than labels and conclusions").

For these reasons, the court has determined that even if the August 10, 2017 Fifth Amended Complaint established jurisdiction as to the patent infringement allegations contained in ¶¶ 96–97, 101–02, 106–07, 111–12, 116–17, 121–22, 126–27, 131–32, 136–37, 141–42, 146–47, and 151–52 of the Fifth Amended Complaint, the allegations contained therein failed to state a claim upon which relief may be granted and must be dismissed under RCFC 12(b)(6).

### e. Patent Infringement Allegations Concerning Broad Agency Announcements Must Be Dismissed Under RCFC 12(b)(6).

The Government argues that patent infringement allegations[29] concerning a DNDO BAA should be dismissed under RCFC 12(b)(6), because the Fifth Amended Complaint "fails to

---

[29] The paragraphs in the Fifth Amended Complaint that include patent infringement allegations concerning the DNDO BAA are: ¶¶ 161–67. These paragraphs are highlighted in red in the attached Court Exhibit B.

34

plausibly allege that the Government either used or manufactured any technologies described in the BAA." 10/20/17 Gov't Mot. at 22.

In relevant part, the Fifth Amended Complaint alleges:

Upon information and belief, the United States has infringed, and continues to infringe, at least claims 1, 2, and 4 of the '497 Patent, claims 34, and 37 of the '752 Patent, claims 13, and 14 of the '439 Patent, and claims 119, 29, 18, 118, 12, 28, 25, 20, 124, 32, and 30 of the '990 Patent as a current manufacturer, consumer, and/or user of the 1"x2" Detection Device (DD) Samsung Galaxy s6 Smartphone; 2"x2" Detection Device (DD) Samsung Galaxy s6 Smartphone; NetS2 SmartShield G300 Radiation Detector Samsung Galaxy s6 Smartphone; NetS2 SmartShield G500 Radiation Detector Samsung Galaxy s6 Smartphone; and the Passport Systems Base Control Unit (BCV) "TOUGHBOOK 31" Panasonic Laptop:

2"x2" Detection Device (DD) Samsung Galaxy s6 Smartphone: In response to the [DNDO's] BAA 09-102 Passport Systems, Inc. of Billerica, MA has developed a system of networked portable spectroscopic radiation detectors to improve the detection, localization, and identification of radiological threats.

\* \* \*

NetS2 SmartShield G500 Radiation Detector Samsung Galaxy s6 Smartphone: Passport Systems Inc. G500 Radiation Detector alarms when radiation levels are detected; used as a standalone device or as part of a network; is the same size, form factor and weight as a smartphone and easily added to the belt of safety personnel; is paired with a smartphone via Bluetooth, and automatically joins a SmartShield Network.

\* \* \*

As a result of contracts with the [DNDO], Passport Systems, Inc., Panasonic Corporation, and the Samsung Group for the development and commercialization of the 1"x2" Detection Device (DD) Samsung Galaxy s6 Smartphone; 2"x2" Detection Device (DD) Samsung Galaxy s6 Smartphone; NetS2 SmartShield G300 Radiation Detector Samsung Galaxy s6 Smartphone; NetS2 SmartShield G500 Radiation Detector Samsung Galaxy s6 Smartphone; and the Passport Systems Base Control Unit (BCU) "TOUGHBOOK 31" Panasonic Laptop the United States has used, authorized the use, and manufactured, without license or legal right, Plaintiff's inventions described in and covered by the '497, '439, '752, and '990 Patents.

8/10/17 Am. Compl. ¶¶ 161–62, 165, 167.

But, the conclusion that, "[a]s a result of *contracts* with the DNDO . . . the United States has used, authorized the use, and manufactured . . . Plaintiff's inventions,'" is not plausibly supported by factual allegations in the Fifth Amended Complaint. 8/10/17 Am. Compl. ¶ 167

(emphasis added). Indeed, the Fifth Amended Complaint fails to identify a single "contract" with the DNDO. Instead, it alleges only that the DNDO issued a BAA; a BAA, however, is not a "contract." *See* 48 C.F.R. § 2.101(b) (defining a "BAA" as "a general announcement of an agency's research interest including criteria for selecting proposals and soliciting the participation of all offerors capable of satisfying the Government's needs"). Again, without more, the Fifth Amended Complaint has not met the requirements of *Twombly* and *Iqbal*. And, conclusory allegations that the Government used or authorized the use of the "Samsung Galaxy s6 Smartphone" in a manner that infringes Plaintiff's patents are likewise insufficient, as such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Sioux Honey Ass'n*, 672 F.3d at 1062 (holding that a complaint "require[s] more than labels and conclusions").

For these reasons, the court has determined that the patent infringement allegations contained in ¶¶ 161–67 of the August 10, 2017 Fifth Amended Complaint must be dismissed under RCFC 12(b)(6).

###### f.      Patent Infringement Allegations Concerning The '033 Patent Must Be Dismissed Under RCFC 12(b)(1).

The Government argues that patent infringement allegations concerning the '033 Patent should be dismissed under RCFC 12(b)(1), because "this patent was surrendered when it was reissued as [the '891 Patent] and [the '990 Patent]." 10/20/17 Gov't Mot. at 22.

An application for reissue of a patent constitutes an offer to surrender the patent. *See* 35 U.S.C. § 251(a) ("[T]he Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent[.]"). "The surrender of the original patent . . . take[s] effect upon the issue of the reissued patent." 35 U.S.C. § 252. Therefore, as a matter of law, "[a]n original patent cannot be infringed once a reissue patent has issued, for the original patent is surrendered . . . [and t]he original claims are dead." *Seattle Box Co., Inc. v. Indust. Crating & Packing, Inc.*, 731 F.2d 818, 827 (Fed. Cir. 1984).

In this case, on two occasions, Plaintiff applied for reissuance of the '033 Patent via the '837 Application and the '853 Application, thereby offering to surrender the '033 Patent in accordance with 35 U.S.C. § 251(a). 2/12/16 Am. Compl. Ex. G, H. Thereafter, the USPTO issued both of these reissue applications, as the '891 Patent and the '990 Patent, respectively, on January 1, 2013 and February 12, 2013. 2/12/16 Am. Compl. Ex. G, H. As such, the '033 Patent was surrendered as of January 1, 2013, *i.e.*, the earliest reissue date. *See* 35 U.S.C. § 252 ("The surrender of the original patent . . . take[s] effect upon the issue of the reissued patent."). Therefore, the court does not have jurisdiction to adjudicate patent infringement allegations concerning the '033 Patent, because the '033 Patent is no longer a "patent of the United States." *See* 35 U.S.C. §§ 251(a), 252; *see also* 28 U.S.C. § 1498(a) (requiring "an invention described in and covered by a patent of the United States").

For these reasons, the court has determined that patent infringement allegations of the August 10, 2017 Fifth Amended Complaint concerning the '033 Patent[30] failed to satisfy Plaintiff's burden to establish jurisdiction under 28 U.S.C. § 1498(a). Accordingly, these allegations of the Fifth Amended Complaint must be dismissed under RCFC 12(b)(1).

g.      **Patent Infringement Allegations Concerning Unissued Patent Applications And Pre-Issuance Use Or Manufacture Must Be Dismissed Under RCFC 12(b)(1).**

The Government argues that patent infringement allegations concerning the '839 Application and pre-issuance use or manufacture of the '439 Patent should be dismissed under RCFC 12(b)(1). 10/20/17 Gov't Mot. at 23.

The '839 Application has not issued, nevertheless the Fifth Amended Complaint alleges that the Government "infringed, and continues to infringe" claims of the '839 Application. 8/10/17 Am. Compl. ¶ 91. In addition, the '439 Patent issued on March 7, 2017, but the Fifth Amended Complaint alleges infringement of the '439 Patent, based on Government "programs" that were cancelled in April 2014, almost three years prior to issuance of the '439 Patent. *Compare* 8/10/17 Am. Compl. ¶¶ 315–16, *with* 10/20/17 Gov't Mot. Ex. 22 (a June 10, 2014 United States Government Accountability Office Report, explaining the DHS's decision to cancel the "BioWatch Gen-3" program in April 2014). In addition, the Fifth Amended Complaint alleges infringement of the '439 Patent, based on NSF grants that expired prior to issuance of the '439 Patent. *Compare* 8/10/17 Am. Compl. ¶¶ 184–85, 199–200, 260–61, 275–76, 280–81, 295–96, 305–06, *with* 10/20/17 Gov't Mot. Ex. 6–8, 10, 12.

The court's jurisdiction under 28 U.S.C. § 1498(a) is limited to allegations "against the [G]overnment arising out of post-issuance [G]overnment use [or manufacture] of an invention." *Hornback v. United States*, 601 F.3d 1382, 1386 (Fed. Cir. 2010) ("The language of section 1498(a) is mandatory, and therefore grants the [United States] Court of Federal Claims exclusive jurisdiction to hear all claims against the [G]overnment arising out of post-issuance [G]overnment use of an invention.").

For these reasons, the court has determined that patent infringement allegations of the August 10, 2017 Fifth Amended Complaint concerning the '839 Application[31] and pre-issuance

---

[30] Infringement of the '033 Patent is alleged in ¶¶ 91–92 of the August 10, 2017 Fifth Amended Complaint, the relevant portions of which the court has highlighted in purple in the attached Court Exhibit B. These paragraphs, however, contain patent infringement allegations concerning other patents and therefore are dismissed to the extent they concern the '033 Patent.

[31] Infringement of the '839 Application is alleged in ¶¶ 91–92 of the August 10, 2017 Fifth Amended Complaint, the relevant portions of which the court also has highlighted in purple in the attached Court Exhibit B. These paragraphs, however, contain patent infringement allegations concerning other patents and therefore are dismissed to the extent they concern the '839 Application.

use or manufacture of the '439 Patent[32] failed to satisfy Plaintiff's burden to establish jurisdiction under 28 U.S.C. § 1498(a). Accordingly, these allegations of the Fifth Amended Complaint must be dismissed under RCFC 12(b)(1).

### h. Patent Infringement Allegations Concerning The '761, '280, And '189 Patents Must Be Dismissed Under RCFC 12(b)(6).

Finally, the Government argues that patent infringement allegations concerning the '761, '280, and '189 Patents should be dismissed under RCFC 12(b)(6), because the Fifth Amended Complaint "alleges no infringement of any claims of these patents." 10/20/17 Gov't Mot. at 23.

With regard to the '761, '280, and '189 Patents, the Fifth Amended Complaint alleges:

> Upon information and belief, the United States has infringed, and continues to infringe, . . . Plaintiff's Tangible Patented Claimed Inventions of . . . [the '761, '280, and '189 Patents.]
>
> * * *
>
> As a result of contracts, agreements, procurements, and grants, for the development and commercialization of Plaintiff's tangible patented claimed inventions, the United States . . . has used, authorized the use, manufactured and developed, without license or legal right, or authorization and consent, Plaintiff's tangible patented claimed inventions as described in and covered by the Plaintiff's . . . '761, '280, . . . [and] '189 . . . [P]atents.

8/10/17 Am. Compl. ¶¶ 91–92.

To survive a motion to dismiss under RCFC 12(b)(6), "[t]here must be some allegation of specific services or products of the defendants which are being accused." *Addiction and Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 937 (Fed. Cir. 2015). The Fifth Amended Complaint, however, does not contain any allegation about how the '761, '280, and '189 Patents were infringed and by what action of the Government.

---

[32] Infringement of the '439 Patent is alleged in ¶¶ 91–92, 96–97, 101–02, 106–07, 111–12, 116–17, 121–22, 126–27, 131–32, 136–37, 141–42, 146–47, 151–52, 156–57, 161–67, 171–72, 176–80, 184–85, 189–90, 194–95, 199–200, 204–05, 209–10, 214–15, 219–20, 224–26, 230–31, 235–36, 240–41, 245–46, 250–51, 255–56, 260–61, 265–66, 270–71, 275–76, 280–81, 285–86, 290–91, 295–96, 300–01, 305–06, 310–11, 315–16, 320–21, 325–26, 330–31, 335–36, 340–41, 345–46, 350–51, 355–56, 360–61, and 365–66 of the August 10, 2017 Fifth Amended Complaint, the relevant portions of which the court has highlighted in pink in the attached Court Exhibit B, if not otherwise highlighted in a difference color. These paragraphs, however, contain patent infringement allegations concerning other patents and therefore are dismissed to the extent they concern the '439 Patent. If Plaintiff can identify post-issuance activity incorporated within these paragraphs that is not otherwise dismissed, the court will reconsider dismissal of those relevant portions.

For these reasons, the court has determined that the patent infringement allegations of the August 10, 2017 Fifth Amended Complaint concerning the '761, '280, and '189 Patents must be dismissed under RCFC 12(b)(6).[33]

## V.    CONCLUSION.

For the reasons discussed herein, the Government's October 20, 2017 Motion For Partial Dismissal, pursuant to RCFC 12(b)(1) and 12(b)(6), is granted-in-part and denied-in-part. Plaintiff's November 17, 2017 Motion For Leave To File A Motion For Summary Judgment, is denied, as the Government "has not had an opportunity to make full discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

The court will convene a telephone status conference within the next two weeks to identify what, if any, patent infringement allegations are viable and may be adjudicated, and how the parties propose proceeding.

   **IT IS SO ORDERED.**

_____
SUSAN G. BRADEN
**Chief Judge**

_____

[33] Infringement of the '761, '280, and '189 Patents is alleged in ¶¶ 91–92 of the August 10, 2017 Fifth Amended Complaint, the relevant portions of which the court also has highlighted in purple in the attached Court Exhibit B. These paragraphs, however, contain patent infringement allegations concerning other patents and therefore are dismissed to the extent they concern the '761, '280, and '189 Patents.